(No. 85444.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSE DIAZ, Appellee.

*Opinion filed August 10, 2000.*

RATHJE, J., took no part.
BILANDIC, J., specially concurring.
HEIPLE, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and David R. Akemann, State's Attorney, of St. Charles (Joel D. Bertocchi, Solicitor General, William L. Browers and Mary Beth Burns, Assistant Attorneys General, of Chicago, and Norbert J. Goetten and Martin P. Moltz, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Linda A. Johnson, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

At issue in this appeal is whether a defendant must withdraw his guilty plea prior to challenging his sentence where, in exchange for pleading guilty, the State dismissed charges against defendant, agreed that defendant's sentences would be served concurrently, and agreed not to seek extended-term sentences. A majority of the appellate court applied this court's decision in *People v. Evans*, 174 Ill. 2d 320, 332 (1996), and held that because the State did not agree to recommend a specific sentence to the trial court as part of the plea bargain, defendant was not required to file a motion to vacate his guilty plea prior to challenging his sentence. Nos.

2—96—0848, 2—96—0849, 2—96—0850 cons. (unpublished order under Supreme Court Rule 23). The appellate court majority proceeded to reach the merits of defendant's appeal, and, after determining that the circuit court erred in allowing certain evidence to be introduced during defendant's sentencing hearing, vacated the circuit court's judgment and remanded the cause for further proceedings. The State appealed to this court. 177 Ill. 2d R. 315. We now vacate the judgment of the appellate court and remand this cause to the circuit court with directions.

## BACKGROUND

Defendant, Jose Diaz, was charged by indictment with seven counts of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)), a Class X felony, and 10 counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1) (West 1994)), a Class 2 felony. These charges related to incidents occurring in Kane County between 1982 and 1995, and involved four minor victims in three separate cases.

On January 18, 1996, defendant pled guilty to one count of aggravated criminal sexual assault, and three counts of aggravated criminal sexual abuse, with each count relating to a different minor victim. In exchange for defendant's guilty pleas to these four counts, the State agreed to dismiss the remaining 13 charges. In addition, the State agreed that it would not object to any sentences imposed upon defendant to run concurrently, rather than consecutively. Finally, the State agreed that it would not seek extended-term sentences against defendant. However, there was no agreement between defendant and the State that a specific sentence would be recommended to the circuit court.

During defendant's guilty plea hearing, the circuit court informed defendant that, in the absence of the plea agreement between defendant and the State, defendant

was eligible to receive consecutive sentences because three separate cases were involved. In addition, the circuit court informed defendant that, absent the plea agreement, defendant was eligible for extended-term sentences for each conviction. In explaining the plea agreement to defendant, the circuit court summarized the sentencing aspects of the agreement as follows: "the attorneys are requesting and agreeing and asking me to agree not to sentence you to a consecutive or extended term, meaning that I won't sentence you to more than 30 years." The defendant thereafter indicated that he understood these aspects of the plea agreement.

The State then provided the factual basis for the charges against defendant. Following the statement of the factual basis for the plea, defendant entered a plea of guilty to the four charges enumerated above. The trial court accepted the guilty plea, finding that the plea was voluntary and that there was a factual basis for the plea.

Defendant's sentencing hearing was held on March 28, 1996. The sole witness called by the State in aggravation was Elgin police officer David Berg, who testified that after the indictments were returned against defendant, two additional incidents of sexual abuse involving defendant were brought to Berg's attention. Officer Berg testified that he had interviewed J.B., a 15-year-old boy, who stated that he had been sexually assaulted by defendant when he was 14 years old. Officer Berg further testified that the Elgin police department had received a report from the Department of Children and Family Services (DCFS) indicating that defendant had had sexual contact with a nine-year-old boy identified as L.E. Officer Berg stated that he had never spoken with L.E., and his knowledge of these incidents was based solely upon the report prepared by DCFS. At the conclusion of Officer Berg's direct examination, the prosecutor stated that, pursuant to the plea agreement between the State and

defendant, no charges would be filed against defendant in connection with the alleged incidents involving J.B. and L.E. Instead, the State agreed to use the allegations only in aggravation at sentencing.

In mitigation, defendant called Timothy Brown, a clinical psychologist and director of the Kane County Diagnostic Center. Brown testified that he met with defendant on two occasions, during which defendant revealed that, between the ages of 12 and 18, he had been sexually abused by a police officer while living in Puerto Rico. Brown stated that defendant expressed a willingness to undergo long-term sexual-offender counseling, that defendant feared that without counseling "he could harm children," and that he believed that defendant would benefit from such counseling. During cross-examination, Brown admitted that he was aware that defendant had been previously convicted in Cook County of aggravated criminal sexual abuse and that defendant had received court-ordered sex offender treatment at that time. Brown also acknowledged that, despite such counseling, defendant had again engaged in similar conduct.

Also testifying on defendant's behalf was Kimberly Diaz, defendant's wife of two years. She testified that she had one child with defendant, and that defendant adopted another one of her children. She stated that defendant was a "very warm person," that he was "good hearted," and that he had provided the family with financial support for the first year of their marriage. However, soon after their first anniversary the couple separated and, before he was taken into custody, defendant was neither living with her nor supporting her. During cross-examination, she acknowledged that defendant had brought the minor male victims to the family home and that defendant committed the alleged sexual acts on the premises. She also testified that defendant had told

her that the minor male victims were related to him, specifically, that the boys were his "nephews."

During the sentencing hearing, the circuit court also reviewed a presentence report regarding defendant, prepared by the Kane County department of adult court services. The report revealed that defendant had a 1990 Cook County conviction for aggravated criminal sexual abuse, which was subsequently reduced and amended to a misdemeanor charge of criminal sexual abuse. An addendum to the presentence report contained a letter from defendant's GED instructor and included his GED scores. Defendant also made a statement in allocution. In his statement, defendant asked for forgiveness, acknowledged his wrongdoing, took full responsibility for his actions, and expressed remorse.

The circuit court then made the following findings. In aggravation, the court found that defendant's prior 1990 Cook County charge for aggravated criminal sexual abuse "carrie[d] a lot of weight," because it was "similar to the charges here." In addition, the circuit court found that defendant's commission of these crimes, despite his prior sex-offender counseling, "mean[t] a lot" in terms of aggravation, and that defendant stood in a position of trust in respect to his minor victims. The circuit court also considered the deterrence of others from committing the same crime, as well as the protection of the public. In mitigation, the circuit court considered that by pleading guilty, defendant prevented the minors from having to testify during a trial. The court also found defendant's statement in allocution and his admission of wrongdoing to be mitigating factors.

Taking all the above factors into consideration, the circuit court sentenced defendant to a 20-year term of imprisonment on the aggravated criminal sexual assault conviction, and to concurrent three-year terms for the three aggravated criminal sexual abuse convictions. After

sentencing, the court informed defendant that he could appeal the decision. The circuit court judge instructed defendant as follows: "you have to file within this court within 30 days a motion to withdraw your guilty plea or reconsider the sentence."

On April 24, 1996, defense counsel filed a motion requesting the circuit court to "reconsider and reduce [defendant's] sentence in light of his age, his minimal criminal history, the lack of injury to the complainants, and his expression of remorse and candor at the sentencing hearing." Attached to this motion was a certificate filed pursuant to Supreme Court Rule 604(d), wherein defendant's trial counsel stated that he "consulted in person with [defendant] to ascertain his contentions of error in the sentence or entry of the plea of guilty and has determined that [defendant] seeks to challenge the sentence imposed for the reasons stated in the motion, but does not desire to withdraw his plea of guilty." A hearing on this motion was held on July 12, 1996, wherein defense counsel again requested the court to reduce defendant's sentence. In denying defendant's motion, the circuit court found that the sentence was appropriate under the circumstances.

In an unpublished order filed pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23), a majority of the appellate court vacated the judgment of the circuit court and remanded this cause for further proceedings. Before the appellate court, defendant argued, for the first time, that he was entitled to a new sentencing hearing because the trial court improperly allowed certain evidence to be introduced during the sentencing proceedings. The majority rejected the argument advanced by the State that, pursuant to this court's then-recent decision in *People v. Evans*, 174 Ill. 2d 320, 332 (1996), defendant's appeal should have been dismissed because of his failure to file a motion to withdraw his guilty plea prior to challenging

his sentence. The majority concluded that, because the State did not agree to recommend a specific sentence to the trial court in exchange for defendant's plea of guilty, *Evans* did not apply. Therefore, the majority concluded, defendant was not obligated to file a motion to withdraw his guilty plea prior to challenging his sentence. The majority then reached the merits of defendant's appeal, and determined that defendant was entitled to a new sentencing hearing as a result of evidentiary errors committed by the circuit court. In dissent, Justice Rathje concluded that *Evans* required defendant to move to withdraw his guilty plea prior to appealing his sentence.

## ANALYSIS

The State contends that the appellate court erroneously reached the merits of defendant's sentencing challenge, because defendant has waived issues relating to his sentencing by failing to first file with the circuit court a motion to withdraw his guilty plea, as required pursuant to this court's decision in *People v. Evans*, 174 Ill. 2d 320 (1996). We agree. Under the rationale of *Evans* and its progeny, defendant was required to file a motion to withdraw his plea of guilty before challenging his sentence.

There are at least four types of distinct plea scenarios which can arise when a defendant chooses to enter a plea of guilty. See *People v. Lumzy*, 191 Ill. 2d 182, 185 (2000). First, a defendant may enter an "open" or "blind" plea, wherein the defendant pleads guilty "without receiving any promises from the State in return." *Evans*, 174 Ill. 2d at 332. Under these circumstances, both the State and the defendant may argue for any sentence permitted by statute, and the trial court exercises its full discretion in determining the sentence to be imposed. *Lumzy*, 191 Ill. 2d at 185. Supreme Court Rule 604(d) governs the appeal of a conviction or sentence imposed upon a defendant who enters an open guilty plea (*Lumzy*, 191 Ill. 2d

at 185; *Evans,* 174 Ill. 2d at 332), and provides in pertinent part:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw his plea of guilty and vacate the judgment." 145 Ill. 2d R. 604(d).

In contrast to an open guilty plea where no agreement has been reached between the defendant and the prosecution, a defendant may "negotiate" a plea of guilty with the State. However, " 'not all "negotiated" pleas are the same.' " *Lumzy,* 191 Ill. 2d at 185, quoting *People v. Linder,* 186 Ill. 2d 67, 77 (1999) (Freeman, C.J., specially concurring). We have previously discerned three types of "negotiated" pleas.

A defendant may enter into a "fully" negotiated plea of guilty, in which he agrees to plead guilty in exchange for the State's dismissal of charges and a specific sentencing recommendation by the State. See *Lumzy,* 191 Ill. 2d at 185. In *People v. Evans,* 174 Ill. 2d 320 (1996), we examined the provisions of Rule 604(d) as they relate to a defendant's appeal from a judgment entered in the circuit court upon a fully negotiated plea of guilty. In *Evans,* the defendants and the State had entered into plea agreements in which the defendants pleaded guilty to certain charges. In return, the State agreed to dismiss other charges and to recommend specific terms of imprisonment. After being sentenced to the recommended terms, both defendants appealed their sentences without first moving to withdraw their guilty pleas and vacating the judgments of the circuit court. The defendants argued that because they were challenging only the sentences they received, Rule 604(d) required only that they move to reconsider their sentences.

We held in *Evans* that the motion-to-reconsider-

sentence clause of Rule 604(d) applies only to "open" guilty pleas, and held that a defendant seeking to challenge his sentence after entering a guilty plea which was negotiated with the State as to charging and sentencing must first move to withdraw that plea and vacate the judgment against him. *Evans*, 174 Ill. 2d at 332. We explained in *Evans* that this result was dictated both by the nature of plea agreements and the application of contract law principles. We reasoned that to allow a defendant who had negotiated his plea agreement with the State to challenge his sentence without first requiring him to move to withdraw his plea would be fundamentally unfair to the State, as, under these circumstances, "the guilty plea and the sentence 'go hand in hand' as material elements of the plea bargain." *Evans*, 174 Ill. 2d at 332. We noted that under a contrary result, "[t]he accused could negotiate with the State to obtain the best deal possible in modifying or dismissing the most serious charges and obtain a lighter sentence than he would have received had he gone to trial or entered an open guilty plea, and then attempt to get that sentence reduced even further by reneging on the agreement." *Evans*, 174 Ill. 2d at 327-28. Thus, we concluded that in order for a defendant to challenge his sentence following the entry of a guilty plea which was negotiated as to charging and sentencing, "he must move to withdraw the guilty plea and vacate the judgment so that, in the event the motion is granted, the parties are returned to the status quo." *Evans*, 174 Ill. 2d at 332.

A second type of "negotiated" plea occurs where a defendant enters a plea of guilty as a result of an agreement between defendant and the State solely as to charging. See *Lumzy*, 191 Ill. 2d at 187. Under such circumstances, a defendant may plead guilty in exchange for the State's agreement to dismiss certain charges or reduce the original charge to a lesser offense. However,

the plea negotiations do not include any agreement between the State and the defendant with regard to sentencing.

This type of plea agreement was recently addressed by this court in *People v. Lumzy*, 191 Ill. 2d 182 (2000). In *Lumzy*, the State agreed to drop a charge against the defendant in exchange for the defendant pleading guilty to another charge. However, the plea agreement was "utterly silent" as to the sentence that defendant would receive. Therefore, both the State and the defendant were free to argue for any sentence available pursuant to the Code of Corrections, and the trial court would exercise its full discretion in imposing any sentence permitted by law. We held that "where the record is clear that *absolutely no agreement existed* between the parties as to defendant's sentence," a defendant is not required to withdraw his guilty plea as a prerequisite to challenging his sentence. (Emphasis in original.) *Lumzy*, 191 Ill. 2d at 187. We determined that, under these circumstances, allowing the defendant to challenge his sentence without first requiring him to move to withdraw his guilty plea did not violate the contract principles which animated the *Evans* decision. In *Lumzy*, unlike in *Evans*, "the sentence did not go 'hand in hand' with the plea," because the "State did not make any facet of sentencing an element of its bargain with defendant." *Lumzy*, 191 Ill. 2d at 189 (Freeman, J., specially concurring). Thus, "[w]hen the State does not provide any sentencing inducement for a defendant in its plea bargain, such a 'negotiated' plea, at least for purposes of the sentencing hearing, more closely resembles an 'open' plea in that the trial court retains all of its discretion at sentencing." *Lumzy*, 191 Ill. 2d at 189 (Freeman, J., specially concurring).

A third type of "negotiated" guilty plea occurs where a defendant pleads guilty in exchange for the State's

agreement to dismiss other pending charges and make sentencing concessions. See *Lumzy*, 191 Ill. 2d at 185-86. Under this circumstance, the State's ability to argue for the full range of penalties provided for in the Code of Corrections is constrained by the parameters of its agreement with the defendant. We addressed this type of plea agreement in *People v. Linder*, 186 Ill. 2d 67 (1999), where we considered whether *Evans* applied in instances where the defendants agreed to plead guilty to certain charges in exchange for the State's dismissal of other charges and recommendations of a sentence "cap." We held in *Linder* that the contract-law principles employed in *Evans* applied with equal force where a defendant agrees to plead guilty in exchange for a recommended sentencing cap. Under these circumstances, "allowing the defendant to seek reconsideration of his sentence without also moving to withdraw his guilty plea unfairly binds the State to the terms of the plea agreement while giving the defendant the opportunity to avoid or modify those terms. That is precisely the situation the *Evans* rule was designed to prevent." *Linder*, 186 Ill. 2d at 74.

In the matter at bar, the State contends that the plea agreement negotiated between itself and defendant is analogous to the type of plea agreement addressed in *Linder*, and, therefore, defendant was required to file a motion to withdraw his plea of guilty in the circuit court before challenging his sentence on appeal. In response, defendant contends that the plea agreement related only to the dismissal of charges, and that "because there was no agreement as to the length of [defendant's] sentence, the sentence was not a part of the plea bargain." According to defendant, it therefore follows that the plea he entered is more akin to an "open" plea in which the sentence may be challenged without impairing his agreement with the State. We reject defendant's argument.

Defendant was indicted for seven counts of ag-

gravated criminal sexual assault, a Class X felony (see 720 ILCS 5/12—14(b)(1) (West 1994)), and 10 counts of aggravated criminal sexual abuse, a Class 2 felony (see 720 ILCS 5/12—16(c)(1) (West 1994)). During the guilty plea hearing on January 18, 1996, the circuit court advised defendant of the charges against him and that he faced possible prison sentences of 6 to 30 years for the aggravated criminal sexual assault charges, and 3 to 7 years for the aggravated criminal sexual abuse charges. The circuit court further advised defendant that, in the absence of his plea agreement with the State, defendant was eligible to receive extended prison terms of 30 to 60 years for the aggravated criminal sexual assault charges, and from 7 to 14 years for the aggravated criminal sexual abuse charges. In addition, the circuit court informed defendant that, in the absence of his plea agreement, defendant was eligible to serve those sentences consecutively.

We find that defendant negotiated a plea agreement with the State in regard to both the charging and sentencing aspects of his case. Therefore, this cause is factually analogous to *Evans* and *Linder*. First, the record is clear that in exchange for defendant's plea of guilty to one count of aggravated criminal sexual assault and three counts of aggravated criminal sexual abuse, the State agreed to dismiss the 13 remaining charges against defendant, 6 of which were Class X felonies. Next, the record is also clear that the State not only agreed that extended-term sentences would not be imposed, but also agreed that it would not seek consecutive sentences. In sharp contrast to the plea bargain in *Lumzy*, where the agreement between the defendant and the State was "utterly silent" as to sentencing, the plea agreement in this case entails significant sentencing concessions on the part of the State as part of its bargain with defendant. See *Linder*, 186 Ill. 2d at 79 (Freeman, C.J., specially

concurring). Indeed, by virtue of its agreement with defendant, the State "limited its ability to argue at sentencing from the full panoply of penalties contained in the Code of Corrections" (*Linder*, 186 Ill. 2d at 79 (Freeman, C.J., specially concurring)), as it was foreclosed from urging the circuit court to impose extended and/or consecutive sentences upon defendant. The result of the agreement between defendant and the State was that defendant would not receive a sentence in excess of 30 years. In the absence of the plea agreement, defendant faced a maximum extended-term sentence of 60 years for the Class X crime of aggravated criminal sexual assault, as well as the possibility that this sentence could have been served consecutively with the sentences imposed upon him for the aggravated criminal sexual abuse convictions, which carry an extended-term maximum of 14 years' imprisonment. Therefore, it is clear that the State made sentencing concessions in entering into the plea agreement with defendant, and that defendant reaped a sentencing benefit from this plea bargain. Under the circumstances presented, defendant's guilty plea and sentence "go hand in hand" as material elements of the plea bargain (*Evans*, 174 Ill. 2d at 332), and it "flies in the face of contract law principles" (*Evans*, 174 Ill. 2d at 327) to allow defendant to unilaterally modify his agreement under these circumstances while holding the State to its end of the bargain. Therefore, we hold that defendant was required to file a motion to withdraw his plea of guilty in the circuit court, prior to challenging his sentence on appeal.

Accordingly, the appellate court majority erred in this case when it determined that *Evans* did not apply because the State did not recommend a specific sentence as part of its agreement with defendant. We note, however, that the appellate court rendered its decision in this matter shortly after our opinion in *Evans* was filed,

and before our subsequent decisions in *Linder* and *Lumzy*. Therefore, the appellate court did not have the benefit of the analysis in *Linder* and *Lumzy*, wherein we considered whether the rationale of *Evans* applied to different plea bargain scenarios.

Summarizing, we take this opportunity to reiterate that where a plea agreement reached between a defendant and the State is silent as to sentencing, a defendant is not required to move to withdraw his guilty plea as a prerequisite to challenging his sentence. *Lumzy*, 191 Ill. 2d at 187. A plea bargain which is silent as to sentencing is analogous to an "open" plea, and the motion-to-reconsider-sentence clause of Rule 604(d) applies. *Evans*, 174 Ill. 2d at 332. However, where a plea agreement between a defendant and the State concerns both the charging and sentencing aspects of the defendant's case, the contract principles animating the *Evans* decision apply, because, under these circumstances, the sentence is premised upon the plea. See *Evans*, 174 Ill. 2d at 327. The existence of a sentencing concession by the State activates the application of the *Evans* rule, as the sentence is thereby made a part of the bargain between the parties. Therefore, if a plea agreement limits or forecloses the State from arguing for a sentence from the full range of penalties available under law, in order to challenge his sentence, a defendant must first move to withdraw his plea in the trial court. If the court grants the motion, both parties are then returned to the status quo as it existed prior to the acceptance of the plea.

In an attempt to preclude the application of the rationale of *Evans* to the instant matter, defendant attempts to draw an analogy between the cause at bar and our prior decisions in *People v. Williams*, 179 Ill. 2d 331 (1997), and *People v. Wilson*, 181 Ill. 2d 409 (1998), wherein we held that defendants are not required to withdraw their guilty pleas prior to a sentence challenge

if the sentence is "void" because it "does not conform with the statute." *Williams*, 179 Ill. 2d at 333; *Wilson*, 181 Ill. 2d at 413. We find that both *Williams* and *Wilson* are factually inapposite to the matter at bar.

In *Williams*, the defendant pled guilty to retail theft after the State agreed to dismiss another charge and recommend a seven-year sentencing cap. The circuit court imposed consecutive sentences of 3 years' imprisonment, followed by 30 months' probation for the theft. Defendant appealed, arguing that the circuit court lacked statutory authority to impose consecutive prison and probation terms for a single offense. We agreed, and held that *Evans* does not bar a sentence challenge where a defendant claims that his sentence is void because it does not conform with the sentencing provisions of the Unified Code of Corrections. *Williams*, 179 Ill. 2d at 333. We have since reaffirmed this holding in *Wilson*, stating that a "challenge to a trial court's statutory authority to impose a particular sentence is not waived when a defendant fails to withdraw his guilty plea and vacate the judgment." *Wilson*, 181 Ill. 2d at 413. We concluded in *Wilson* that, under the specific circumstances where the circuit court imposed sentences which violated the statutory requirements found in the Unified Code of Corrections, a court may review a challenge to a statutorily improper sentence without requiring the defendant to first move to withdraw his guilty plea. We find defendant's reliance upon *Williams* and *Wilson* to be misplaced, as no allegation has been made in this case that defendant's sentence is statutorily void.

Finally, in his brief to this court, defendant contends that, if we determine under these circumstances that he was required to move to withdraw his guilty plea prior to challenging his sentence, we should also remand this cause to the circuit court, where defendant may be properly admonished and, if he so chooses, file a motion

to withdraw his guilty plea and vacate the circuit court's judgment. We agree.

The case at bar presents factual circumstances which we find to be analogous to those present in *People v. Clark*, 183 Ill. 2d 261 (1998). In *Clark*, we remanded the defendant's cause to the circuit court to allow the defendant an opportunity to file a motion to withdraw his guilty plea and vacate judgment. We determined that the disposition was appropriate because the proceedings in the circuit court "took place some two years prior to our decision in *Evans* so that neither defense counsel nor the circuit court had the benefit of its analysis as to the proper post-plea motion to be filed after a guilty plea is entered pursuant to a negotiated agreement." *Clark*, 183 Ill. 2d at 270. In the instant matter, defendant entered his guilty plea on January 18, 1996, and was sentenced on March 28, 1996. The record reflects that, after defendant was sentenced, the trial court instructed defendant as follows concerning an appeal: "Now, you still have the right to appeal what we're doing and if you wish to appeal what we're doing, you have to file within this court within 30 days a motion to withdraw your guilty plea or reconsider the sentence. *** If I deny *** the request for reconsideration, you have 30 days after that date to file a notice of appeal." Defense counsel filed a motion to reconsider sentence on April 24, 1996, and the circuit court denied the motion for reconsideration on July 12, 1996. All of these events occurred well before our decision in *Evans*. As in *Clark*, neither defense counsel nor the circuit court had the benefit of our *Evans* ruling with regard to the proper post-plea proceedings. Under these specific circumstances, fundamental fairness dictates that we remand this cause to the circuit court with instructions to vacate its order denying defendant's reconsideration motion. We further instruct the circuit court to properly admonish defendant and allow defendant the

opportunity to move to withdraw his guilty plea and vacate the judgment, if he so chooses. See *Clark*, 183 Ill. 2d at 271.

### CONCLUSION

For the foregoing reasons, we vacate the judgment of the appellate court, and remand this cause to the circuit court with instructions that it vacate its order denying defendant's motion to reconsider, that it properly admonish defendant, and that it allow defendant the opportunity to move to withdraw his guilty plea and vacate judgment.

*Appellate court judgment vacated;*
*cause remanded with directions.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE BILANDIC, specially concurring: ʹ

I agree that *People v. Evans*, 174 Ill. 2d 320 (1996), applies to the plea agreement in this case. I write separately, however, to set forth my continued adherence to the views expressed in my dissenting opinion in *People v. Lumzy*, 191 Ill. 2d 182, 190 (2000) (Bilandic, J., dissenting).

In *Evans*, we held that the motion-for-sentence-reconsideration provisions of Rule 604(d) (145 Ill. 2d R. 604(d)) apply only to "open," as opposed to "negotiated," guilty pleas. *Evans*, 174 Ill. 2d at 331-32. We defined an open guilty plea as one in which a defendant pleads guilty "without receiving *any* promises from the State in return." (Emphasis added.) *Evans*, 174 Ill. 2d at 332. The defendants in *Evans* agreed to plead guilty and, in exchange, the State promised to dismiss other charges and recommend a specific sentence. The trial court accepted the plea agreements in both cases and entered judgments in accordance with the terms of the agree-

ments. The defendants later sought to reduce their sentences to which they agreed without first moving to vacate their guilty pleas. We held that the defendants could not do this. *Evans*, 174 Ill. 2d at 333-34. To hold otherwise would violate basic contract law principles by allowing the defendants to hold the State to its part of the bargain while unilaterally reneging on or modifying the terms that they had previously agreed to accept. *Evans*, 174 Ill. 2d at 327-28.

In *Lumzy*, the defendant was charged with robbery, a Class 2 felony (see 720 ILCS 5/18—1 (West 1998)), and aggravated battery, a Class 3 felony (see 720 ILCS 5/12—4 (West 1998)). At a hearing, the trial court advised defendant of the charges against him and that he faced possible prison sentences of three to seven years for the robbery, and two to five years for the aggravated battery. The trial court further advised defendant that he could receive extended prison terms and therefore be sentenced to prison terms of 14 and 10 years, respectively. The defendant and the State, however, ultimately reached a plea agreement. The defendant agreed to plead guilty to robbery in exchange for the State's promise to dismiss the aggravated battery charge. The trial court accepted the plea agreement and, following the defendant's guilty plea to robbery, sentenced the defendant to seven years in prison. See *Lumzy*, 191 Ill. 2d at 192 (Bilandic, J., dissenting).

A majority of this court in *Lumzy* held that the principles enunciated in *Evans* did not apply to the plea scenario at issue, and that the defendant could therefore challenge the length of his sentence without first filing a motion to withdraw his guilty plea. The majority reasoned that the defendant "never agreed, impliedly or otherwise, to accept whatever sentence the trial court might have imposed." Thus, according to the majority, the contract principles that guided this court's decision

in *Evans* did not prevent the defendant in *Lumzy* from appealing only the length of his sentence. See *Lumzy*, 191 Ill. 2d at 187.

I dissented in *Lumzy* on the basis that the defendant's plea agreement was negotiated within the meaning of *Evans*. The plea agreement that the parties in *Lumzy* negotiated provided the defendant with the valuable benefit of a less severe sentence than he could have received had he been convicted of both robbery and aggravated battery. *Lumzy*, 191 Ill. 2d at 192-93 (Bilandic, J., dissenting). Moreover, by pleading guilty to robbery in exchange for the State's promise to dismiss the aggravated battery charge, the defendant in effect agreed that a sentence within the statutory range for robbery was appropriate. The defendant was in fact sentenced to seven years in prison for the robbery—a sentence within the statutory range. *Lumzy*, 191 Ill. 2d at 193 (Bilandic, J., dissenting). Allowing the defendant to challenge the length of his sentence without also requiring him to move to withdraw his guilty plea unfairly binds the State to its part of the plea bargain, *i.e.*, the dismissal of the aggravated battery charge, while allowing the defendant the opportunity to renege on or modify the terms to which he had previously agreed. *Lumzy*, 191 Ill. 2d at 193 (Bilandic, J., dissenting). Such a result is not proper under this court's holding in *Evans*.

Today, the majority cites *Lumzy* and states that the plea agreement in *Lumzy* is distinguishable from the plea agreement in this case. 192 Ill. 2d at 223. The majority reasons that, in contrast to the plea agreement in *Lumzy*, where there was no agreement as to sentencing, the plea agreement in this case entails an agreement between the parties regarding the defendant's sentence and, therefore, *Evans* applies. 192 Ill. 2d at 223. Although I agree that the principles set forth in *Evans* apply to the plea agreement in this case, I adhere to my view that these principles likewise apply to the plea agreement in *Lumzy*.

With the foregoing understanding, I concur in the majority's decision.

JUSTICE HEIPLE, dissenting:

I agree with the majority that the facts of this case are analogous to those in *People v. Linder*, 186 Ill. 2d 67 (1999). However, for the same reasons that led me to dissent in *Linder*, I believe that defendant in this case did not have to move to withdraw his guilty plea before challenging the length of his sentence on appeal.

Defendant in this case pled guilty to one count of aggravated criminal sexual assault and three counts of aggravated criminal sexual abuse. In exchange for this guilty plea, the State agreed to dismiss several other charges against defendant. The agreement did not specify the sentence defendant would receive; however, the State did agree not to seek extended-term sentences against defendant.

After a hearing, the trial court sentenced defendant to a term of 20 years in prison on the aggravated criminal sexual assault charge, and concurrent three-year terms on each of the aggravated criminal sexual abuse charges. Defendant then filed a motion to reconsider sentence, which the trial court denied. Defendant appealed.

The majority today holds that defendant should not be permitted to appeal the length of his sentence without first moving to withdraw his guilty plea. According to the majority, by entering into the plea deal with the State, defendant impliedly agreed not to challenge any non-extended-term sentence which the trial court might impose. The majority relies upon the reasoning of this court's opinion in *People v. Linder*, 186 Ill. 2d 67 (1999), in which a majority of this court held that a defendant entering into a plea agreement which includes a sentencing *cap* impliedly agrees not to challenge any sentence falling underneath that cap.

I dissented in *Linder.* In that case, I noted that:

"Presumably, if the State and the defendants had been able to agree on an appropriate sentence, they would have decided to recommend that specific sentence to the trial court. In the absence of such agreement, neither party was entitled to expect the entry of any particular sentence within the recommended range. In other words, at the time a plea agreement involving a sentencing cap is accepted by the trial court, the appropriate sentence, as far as the two parties are concerned, has yet to be determined. A defendant thus does not violate any term of such an agreement by seeking reconsideration of the sentence imposed by the trial court. This situation is no different than that where a defendant enters an open or blind plea, thus exposing himself to the maximum statutory sentence. In such a case, the maximum sentence is the cap. In that situation, the defendant may challenge the length of his sentence without moving to withdraw his plea of guilty. [Citation.]" *Linder*, 186 Ill. 2d at 82 (Heiple, J., dissenting).

So too, in the instant case, defendant and the State were unable to agree as to the appropriate sentence for defendant's crimes. Accordingly, at the time the parties entered into the plea agreement, the appropriate sentence was yet to be determined.

The parties in this case surely *could have* expressly agreed that defendant would not challenge any non-extended-term sentence. Indeed, if the parties *had* so agreed, it would obviously have been in the interest of the State to memorialize that understanding. The fact that the record in this case does not reflect such a meeting of the minds, however, strongly indicates that the State and defendant did not reach that agreement. Under these circumstances, there is no reason why this court should feel compelled to award the State concessions which it was unable to win at the bargaining table.

For the foregoing reasons, I would hold that defendant did not violate any term of his agreement by challenging the length of the sentence imposed by the trial court. Accordingly, defendant should have been permit-

ted to appeal the length of his sentence without first moving to withdraw his guilty plea.

I therefore dissent.