NOTICE
Decision filed 09/11/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220310-U

NO. 5-22-0310

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 20-CF-158 |
| | ) | |
| DMITRIY SERGEYEVIC SELEZNEV, | ) | Honorable |
| | ) | Tyler R. Edmonds, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's sentencing was not excessive, postplea counsel complied with Rule 604(d), and defendant failed to show his postplea counsel provided ineffective assistance.

¶ 2    Following a guilty plea, defendant, Dmitriy S. Seleznev, was convicted of one count of criminal sexual assault and one count of traveling to meet a minor. He was subsequently sentenced to 13 years on the criminal sexual assault charge and 5 years on the traveling to meet a minor charge with the sentences running consecutively. Defendant appeals the trial court's denial of his motion to reduce his sentence. He further argues that his postplea counsel failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) and his trial counsel was ineffective. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On September 25, 2020, defendant was charged, by information, with five counts of child pornography in violation of section 11-20.1(a)(4) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(4) (West 2020)), two counts of indecent solicitation of a child in violation of section 11-6(a) of the Code (*id.* § 11-6(a)), two counts of traveling to meet a minor in violation of section 11-26(a) of the Code (*id.* § 11-26(a)), and two counts of grooming in violation of section 11-25(a) of the Code (*id.* § 11-25(a)). A warrant for defendant's arrest was issued. Defendant was arrested in the State of Washington, and following extradition, his first appearance was held on February 26, 2021. On March 11, 2021, defendant retained counsel, Christian Baril.

¶ 5     Defendant's preliminary hearing was held on April 5, 2021. Agent Steven Melcher from the Illinois State Police testified that he was involved with the investigation after a complaint was made by a 15-year-old female and her mother to the Jonesboro Police Department. Agent Melcher stated the minor was contacted via social media that the male subject would be traveling to Union County to meet the minor. Agent Melcher stated defendant was the male subject and that defendant contacted multiple juvenile females, sent nude images of himself to the females, requested nude images from the females, and traveled to and requested sexual conduct with those females. During his investigation, Agent Melcher discovered defendant had 37 Snapchat accounts, 25 Instagram accounts, and 1 Facebook account. One of the victims admitted sending defendant a nude image of herself. During a second Child Advocacy Center (CAC) interview, the victim admitted that defendant pulled down his pants to expose his penis and they engaged in sex in defendant's vehicle. He also moved his hand underneath her clothing and touched her bare breast. He later tried to have sex with the victim again, but she began crying so they did not have sex. Agent Melcher also stated there were threatening text messages and pictures sent to the victim, including a handgun in

2

defendant's possession and a knife. The victim was reminded of the gun when they were having sex. The agent stated there were three potential female victims: A.B.C., C.A., and N.L. The court found probable cause. Defense counsel waived a formal reading of the charges and entered pleas of not guilty for each count.

¶ 6    On April 28, 2021, an amended information was filed. Therein, defendant was charged with two counts of criminal sexual assault in violation of section 11-1.20(a)(2) of the Code (*id.* § 11-1.20(a)(2)), two counts of aggravated criminal sexual abuse in violation of section 11-1.60(d) of the Code (*id.* § 11-1.60(d)), two counts of indecent solicitation of a child in violation of section 11-6(a) of the Code (*id.* § 11-6(a)), two counts of traveling to meet a minor in violation of section 11-26(a) of the Code (*id.* § 11-26(a)), and two counts of grooming in violation of section 11-25(a) of the Code (*id.* § 11-25(a)). On April 30, 2021, defense counsel moved to sever defendant's charges to separate the counts as to each victim. The same day, a second amended information was filed in which defendant was charged with the same counts as set forth in the April 28, 2021, amended information.

¶ 7    On May 20, 2021, the trial court granted defendant's motion to sever. Counts I, II, III, IV, V, VII, and IX, involving alleged victim, A.B.C., would be case No. 20-CF-158-A. Counts VI, VIII, and X, involving alleged victim, C.A., would be case No. 20-CF-158-B.

¶ 8    On June 3, 2021, defendant moved to continue the jury trial, and the State provided notice of its election to proceed first with the counts in A.B.C.'s case. The court granted the motion and set the case for a final pretrial on September 10, 2021.

¶ 9    On September 10, 2021, defense counsel advised the court of a plea agreement involving both victims. Defendant would plead guilty to counts I (criminal sexual assault) and VIII (traveling to meet a minor) and the remaining counts would be dismissed. No sentencing cap was included

3

in the plea agreement. A written copy of the plea agreement was provided to the court. Following inquiry and admonishments by the court, as well as the fact presentation by the State to which no dispute was raised by defense counsel, the plea agreement was accepted. Notably, the court's inquiry included whether defendant was satisfied with his counsel's representation and defendant answered affirmatively. The court's admonishments included that defendant would face 4 to 15 years' imprisonment for the criminal sexual assault charge, 2 to 5 years' imprisonment for the traveling to meet a minor charge, and the sentences were mandated to run consecutively. Defendant stated he understood. A sentencing hearing was set for November 12, 2021.

¶ 10    On October 28, 2021, a sex offender clinical evaluation was filed. On November 1, 2021, the presentence investigation report (PSI) was filed revealing no prior criminal offenses.

¶ 11    At the sentencing hearing, defense counsel objected to the admission of the sex offender evaluation report. The court sustained defendant's objection and stated it would "set that aside and I'll ask the clerk to shred that for me." Both parties had no objections or amendments to the PSI.

¶ 12    Defense counsel read letters from defendant's four siblings, parents, and other relatives and neighbors. The letters expressed their appreciation and love of defendant's helpfulness, caring behavior, and disposition. In-person witness testimony was provided by defendant's older sister, Alina Seleznev. Alina testified that their parents had seven children. She also provided the family's history related to their move from the U.S.S.R. in 1993. She further testified that when she got divorced, defendant stepped up as a father figure to her daughter. She also addressed defendant's employment history and lack of any prior criminal activity.

¶ 13    The court addressed the potential sentencing ranges for the charges. Both parties agreed with the ranges as presented by the court. The State provided its argument regarding factors in aggravation and requested the maximum sentence for both charges for a total of 20 years.

Thereafter, a victim advocate read a statement by one victim's sister. The mother of one of the victims read a statement and a statement from one of the victims was read to the court.

¶ 14    The defense argued for the minimum total of four years for count I and probation for count II due to this being defendant's first offense, his admission of the crimes, and his sorrow and empathy for the family. Thereafter, defendant provided a statement apologizing for the pain and embarrassment caused to the victims, their families, and his own family.

¶ 15    The court commended defendant for pleading guilty. It explained that sparing the victims the difficulty of a trial was "a very significant thing." The court acknowledged defendant had a "clean criminal record" and family that loved and cared for him. However, the court noted that "these are very serious crimes, and even under the best of circumstances, these crimes are damaging to people, relationships, to the victims and their family, and to [defendant's] own family."

¶ 16    The court found the victim impact statements "quite powerful," and the damage from defendant's action was significant and immeasurable. The court expressed "great concern" about the way he developed his relationships, finding it was "inexcusable" that he actively sought them out before traveling hundreds of miles to meet with them. The court stated that deterrence was also a factor to be considered. The court again noted "the fact that [defendant] traveled hundreds of miles to commit these offenses with these children" was "inexcusable." Thereafter, the court sentenced defendant to 13 years for count I to be served at 85% and 5 years on count II to be served at 50%. The court encouraged defendant to participate in sex offender treatment while incarcerated, noting there were "clearly" positive aspects to his character.

¶ 17    The parties returned to court on November 29, 2021, because the court realized that although defendant signed a written acknowledgement of his appeal rights, the court did not

verbally advise him of his appeal rights following the sentencing. The court stated that Rule 605(c) would apply because this was "a partially negotiated plea." The court admonished, *inter alia*, that prior to taking an appeal, defendant was required to file "within 30 days of the date on which [his] sentence [was] imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty." See Ill. S. Ct. R. 605(c)(2) (eff. Oct. 1, 2001). Thereafter, the court provided defendant 30 days from November 29, 2021, to file any appeal.

¶ 18     On December 8, 2021, defense counsel filed a motion to withdraw guilty plea, and on December 10, 2021, filed a motion to reconsider sentence. The motion to withdraw guilty plea indicated it was being filed so that defendant could properly challenge his sentence pursuant to Illinois Supreme Court 604(d) (eff. July 1, 2017) and *People v. Linder*, 186 Ill. 2d 67, 69-74 (1999) (holding that where a defendant pleads guilty in exchange for the dismissal of other charges and a sentencing-cap recommendation, he is required to file a motion to withdraw guilty plea because "[b]y agreeing to plead guilty in exchange for a recommended sentencing cap, a defendant is, in effect, agreeing not to challenge any sentence imposed below that cap on the grounds that it is excessive"). The motion to reconsider sentence asserted the trial court placed too much weight on the fact that defendant's conduct caused or threatened serious harm, improperly considered that he traveled hundreds of miles to commit the offenses, and failed to give due consideration to his lack of criminal history and unlikeliness to reoffend.

¶ 19     In March 2022, counsel advised the trial court that he intended to speak with defendant within a week and would amend the motions if necessary. In May 2022, counsel filed a Rule 604(d) certificate, and the cause proceeded to a hearing on defendant's postplea motions. At the outset of the hearing, the parties advised the court that defendant's motion to withdraw guilty plea had been filed as a matter of procedure so that he could challenge his sentence. Stating that it understood,

the trial court denied the motion to withdraw, and the parties proceeded to argue their positions with respect to defendant's motion to reconsider sentence.

¶ 20    Defendant first objected to the five-year sentence imposed on count VIII, arguing that by considering that he traveled hundreds of miles to commit the offense of traveling to meet a minor, the court improperly considered a factor inherent in the offense. With respect to count I, defendant argued that because emotional harm was implicit in the offense of criminal sexual assault and no physical harm was alleged, the trial court placed excessive weight on the fact that his conduct caused or threatened serious harm.

¶ 21    With respect to both counts, defendant asked the court to reconsider the mitigating factors that he had no prior criminal history and that his character and attitude indicated he was unlikely to reoffend. Defendant again emphasized that he had apologized, expressed remorse, and spared the victims the experience of a "painful" trial by taking responsibility for his actions. Defendant asked the court to reduce the sentences imposed on both counts.

¶ 22    In response, the State argued that the trial court clearly considered and weighed all the relevant factors in aggravation and mitigation and defendant was essentially seeking to "constrict" the court's ability to consider the factors in aggravation. The State emphasized that defendant committed serious offenses against child victims and that the court previously, and correctly, noted the harm and trauma he had caused.

¶ 23    The State maintained that it was not improper for the trial court to consider that defendant traveled to commit the offenses. The State suggested that defendant's travels reflected his "willingness and motivation," and that in any event, it was only one factor that the court considered. Noting that numerous charges were dismissed pursuant to the parties' plea negotiations, the State argued that defendant "took full advantage of his ability to mitigate his risks

7

by taking a[n] [open] plea" that allowed the court to determine the appropriateness of the resulting sentence. The State objected to any reduction of the sentences imposed.

¶ 24 After finding that counsel made "some good points" regarding the fashioning of defendant's sentence, the trial court addressed each argument raised in defendant's motion to reconsider. With respect to its consideration of defendant's "travel in the case," the court stated that it had reviewed the transcript of the sentencing hearing and that when discussing the matter, it "wasn't as clear as [it] should have been." The court explained that when discussing the fact that defendant had traveled "a great distance to commit these offenses," it was expressing its concerns as to the "deliberate" and "predatory nature" of defendant's conduct. The court noted that defendant "didn't know these victims" and that "[t]hese were not crimes of opportunity." The court indicated that it was troubled by the "planning that was involved" and the fact that defendant "sought out these victims online," "cultivated" relationships with them, and then "traveled a distance to meet them in a place where no one would know him."

¶ 25 Repeatedly emphasizing that "[t]his was a difficult case" and that imposing a reasoned and individualized sentence was not "an easy decision to make," the trial court noted that it had considered defendant's lack of criminal history, as well as the evidence demonstrating that there were positive aspects to his character. The court explained, however, that it had to weigh that evidence against the victim impact statements, which the court noted "were quite powerful and weigh[ed] significantly in the decision that the [c]ourt made." Stating that it had appropriately considered and weighed all the relevant factors, the trial court subsequently denied defendant's motion to reconsider sentence. The court wished defendant "nothing but the best" and again encouraged him to seek "the treatment that [he] need[ed] in the Department of Corrections so this type of conduct [would] not happen in the future." Defendant timely appealed.

8

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, defendant argues that the trial court's sentence was excessive because he was a first-time offender, and the State urged reliance on improper factors in aggravation. He further argues that postplea counsel failed to comply with Rule 604(d) and provided ineffective representation at sentencing. The State argues to the contrary and requests affirmation of the trial court's sentencing order.

¶ 28                               A. Excessive Sentence

¶ 29    "It is well settled that the trial court has broad discretionary powers in imposing a sentence [citation], and the trial court's sentencing decision is entitled to great deference [citation]." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). This is so because the trial court that "observed the defendant and the proceedings[ ] has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* "A sentence within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and the purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 30    Defendant first contends that his sentence was the result of an improper double enhancement. He argues the court considered the victims' age, the sexual nature of defendant's acts, the distance traveled by defendant, and the ease of the commission of the crime—all of which are factors inherent in his offenses.

¶ 31    From the outset, we note that defendant's double enhancement argument regarding consideration of the victim's age, the sexual nature of the conduct, and the ease of the commission

9

of the crime, was not presented before the trial court. Where a defendant fails to object to a sentencing error in the trial court and raise it in a postsentencing motion, the error is forfeited. *People v. Stewart*, 2022 IL 126116, ¶ 11. Defendant's motion for reconsideration here contended that the trial court inappropriately placed too great of reliance on the aggravating factor that defendant's criminal conduct caused or threatened serious harm. He alleged that neither count I nor count VIII alleged any physical threat or violence to either victim and "the mental and emotional harm caused to the victims is inherent in these types of offenses and have already been taken into account by the legislature."[1] His motion to reconsider also contended the court's consideration that defendant traveled hundreds of miles to commit the offenses was improper because it was an element of count VIII. However, no argument related to the sexual nature of the conduct, the victims' ages, or the ease of the commission of the crime was presented. Further, no argument was presented on appeal as to why this court should consider the forfeited argument. See *People v. Herron*, 215 Ill. 2d 167, 177 (2005). Accordingly, these contentions are forfeited, and we address the only preserved double enhancement argument asserted on appeal, *i.e.*, whether the court improperly considered the distance traveled by defendant.

¶ 32    Although a court has broad discretion in sentencing, it may not engage in double enhancement. See *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). Double enhancement occurs when "a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." (Internal quotation marks omitted.) *People v. Siguenza-Brito*, 235 Ill. 2d 213, 232 (2009).

¶ 33    Here, defendant was convicted of criminal sexual assault, which requires the State to prove defendant committed "an act of sexual penetration and: *** (2) [knew] that the victim [was] unable

---

[1]Defendant did not raise this argument on appeal.

to understand the nature of the act or [was] unable to give knowing consent." 720 ILCS 5/11-1.20(a)(2) (West 2020). He was also convicted of traveling to meet a minor, which requires the State to prove defendant traveled

> "any distance either within this State, to this State, or from this State by any means, *** for the purpose of engaging in any sex offense as defined in Section 2 of the Sex Offender Registration Act, or to otherwise engage in other unlawful sexual conduct with a child or with another person believed by the person to be a child after using a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, or to attempt to seduce, solicit, lure, or entice, a child or a child's guardian, or another person believed by the person to be a child or a child's guardian, for such purpose." *Id.* § 11-26(a).

¶ 34 Defendant contends the court engaged in double enhancement by heavily relying on his traveling to meet the victims in his sentencing. However, traveling was only a factor in one of the counts to which defendant pled guilty. As noted above, the first count alleged criminal sexual assault, which does not require any proof regarding the distance traveled by defendant. Any reliance, by either the State or the trial court, on defendant's traveling hundreds of miles to meet with the underage victim, cannot be double enhancement with respect to this conviction.

¶ 35 Defendant's conviction for traveling to meet a minor does require proof of travel of "any distance either within this State, to this State, or from this State." *Id.* Here, it is notable that the element of the offense requires "*any distance*" traveled. *Id.* While the trial judge cannot consider factors implicit in the offense, it may consider "the nature and circumstances of the offense, including the nature and extent of each element of the offense committed by the defendant." *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 29; *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986).

11

Given the statute does not require a specific length of distance traveled, we find the length of distance traveled can properly speak to the nature of the offense.

¶ 36     Indeed, the trial court clarified at the reconsideration hearing that its reliance on the distance was based on its concerns as to the "deliberate" and "predatory nature" of defendant's conduct. More specifically, the court noted that defendant "didn't know these victims" and that "[t]hese were not crimes of opportunity." The court indicated that it was troubled by the "planning that was involved" and the fact that defendant "sought out these victims online," "cultivated" relationships with them, and then "traveled a distance to meet them in a place where no one would know him." Taken in such context, we find the court's consideration of the distance traveled by defendant, from Washington State to Union County, Illinois, was the court accounting for the nature of this particular offense. Accordingly, we cannot find the trial court improperly relied on defendant's travel in rendering its sentence as to defendant's travel to meet a minor conviction either.

¶ 37     Defendant also contends that the trial court's sentence was excessive because the court sentenced him to 18 years' imprisonment, which is only 2 years below the maximum, despite noting the significance of the mitigating factors. According to defendant, this evinces that the court believed it should impose the maximum sentence absent any mitigating factors, when the court should have started at the minimum sentence. We disagree.

¶ 38     In fashioning "a sentence that reflects both the seriousness of the offense and the objective of restoring the defendant to useful citizenship," the sentencing court must balance and consider both the aggravating and mitigating factors. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 20. "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute

does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The court here specifically noted the aggravating factors of the seriousness of the crimes, the impact of the crimes on the victims as evinced by the victim impact statements, the deliberate and planned out nature of the offense, and the need for deterrence. Thus, while the court was duty-bound to account for the mitigating factors, it also was required to balance those mitigating factors against the aggravating factors in determining its sentence. Given the competing considerations here, we cannot say the court's 18-year sentence was greatly at variance with the spirit and the purpose of the law or manifestly disproportionate to the nature of the offense. To accept defendant's argument would require this court to reweigh the factors, which we cannot do. See *Fern*, 189 Ill. 2d at 53 (when "considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently"). Accordingly, we find defendant's sentence was not excessive.

¶ 39                                  B. Rule 604(d) Compliance

¶ 40    Defendant also argues that his counsel failed to comply with Rule 604(d) and provided ineffective assistance of counsel. Whether postplea counsel complied with the obligations under Rule 604(d) is reviewed *de novo*. *People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 41    "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7. Postplea counsel is required to strictly comply with Rule 604(d). *People v. Shirley*, 181 Ill. 2d 359, 362 (1998). The rule's purpose " 'is to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but

13

nevertheless were unwittingly given sanction in the courtroom.' " *In re H.L.*, 2015 IL 118529, ¶ 9 (quoting *People v. Wilk*, 124 Ill. 2d 93, 104 (1988)).

¶ 42 Rule 604(d) requires postplea counsel to file a certificate with the trial stating

"the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the [postplea] motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

The purpose of the certificate is to ensure " 'counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence.' " *In re H.L.*, 2015 IL 118529, ¶ 10 (quoting *Shirley*, 181 Ill. 2d at 361).

¶ 43 Here, it is undisputed that defendant's postplea counsel filed the Rule 604(d) certificate. However, even where counsel files a facially valid certificate, "we may consult the record to determine whether she actually fulfilled her obligations under Rule 604(d)." *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8. Defendant claims the validity of the certificate is undermined by counsel's failure to educate the court on whether defendant's guilty plea was "open" and not "negotiated." He claims that counsel's actions placed the underlying guilty plea, that dismissed multiple other charges, at risk.

¶ 44 Because the State dismissed certain charges in exchange for defendant to plead guilty, defendant's plea was partially negotiated. See *People v. Diaz*, 192 Ill. 2d 211, 220-21 (2000). However, because the plea agreement was silent as to the sentence which defendant would receive, defendant is correct that he was not required to file a motion to withdraw his plea in order to

14

challenge his sentence. *Id.* at 225; see *People v. Lumzy*, 191 Ill. 2d 182, 187 (2000) (holding that where the State agrees to dismiss certain charges against a defendant in exchange for his plea of guilty, but no agreement exists as to the sentence, the defendant is not required to file a motion to withdraw guilty plea before challenging his sentence). Defense counsel should have known the law on this matter, but we do not find counsel's failure to argue this in court violated Rule 604(d).

¶ 45 As noted above, under Rule 604(d), counsel was required to ascertain defendant's contentions of error, examine the record, and make any amendments to the postplea motion "necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Here, the contentions of error regarded only the sentence. Defendant's motion to withdraw noted that it was filed only to challenge defendant's sentence. At the hearing on the motion, counsel confirmed that he only filed the motion to withdraw to ensure necessary presentation of defendant's sentencing claims. As such, defense counsel's actions protected defendant's ultimate goal, *i.e.*, reconsideration of his sentence. Despite counsel acting under the incorrect directive of the trial court, defendant achieved his goal, and the trial court reconsidered his sentence. Where there is no claim that the counsel's actions affected the trial court's reconsideration of defendant's sentence, we fail to see how postplea counsel's actions rebuts the presumption that he complied with the Rule 604(d) requirements to ascertain defendant's contentions, review the record, and amend the motions to adequately present the contentions of error. We therefore decline to find postplea counsel failed to comply with Rule 604(d).

¶ 46                    C. Ineffective Assistance of Counsel

¶ 47 Finally, defendant contends that his postplea counsel provided ineffective assistance of counsel. Illinois relies on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to govern claims of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 526-27

15

(1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A] defendant must establish both prongs of the *Strickland* test, such that the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 31. We address each of defendant's claims in turn.

¶ 48    Defendant first claims counsel provided ineffective assistance by allowing defendant to sign a written plea agreement that included a provision that defendant acknowledge the "Prosecutor has entered into no agreement concerning a specific sentence or reduction and/or dismissal of charges upon" the guilty plea. As noted above, defendant's plea was partially negotiated, and the State dismissed other charges in exchange for the plea. As such, this provision of the written plea of guilty was incorrect. However, no prejudice can be shown where the State dismissed the charges and defendant received the benefit of his bargain.

¶ 49    We also find no prejudice regarding defendant's claims of ineffective assistance of counsel based on counsel's failure to address the trial court's improper attempt to extend the deadlines for filing posttrial motions and counsel's unnecessary filing a motion to withdraw the plea. A defendant must show "actual prejudice, not simply speculation that defendant may have been prejudiced." (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 126291, ¶ 55. Despite the trial court's attempt to extend the deadlines after sentencing and trial counsel's failure to advise the court differently, all postplea pleadings were timely filed. Also, as noted above, postplea

16

counsel's filing of a motion to withdraw did not prejudice defendant where the trial court did not vacate defendant's guilty plea and defendant's request for a reduced sentence was presented and addressed by the trial court. As such, these claims of ineffective assistance of counsel must fail for lack of prejudice.

¶ 50 Defendant lastly contends counsel improperly agreed that defendant was potentially subject to an extended-term sentence on his Class 1 criminal sexual assault count and Class 3 traveling to meet a minor count. He argues, citing *People v. Bell*, 196 Ill. 2d 343, 350 (2001), that generally, an extended term may not be imposed on a lesser class felony (see 730 ILCS 5/5-8-2(a) (West 2020)) although extended-term sentences may be imposed on separately charged, differing class offenses that arise from unrelated courses of conduct. He claims that counsel's conduct was professionally unreasonable and left him either unadvised or misadvised regarding his open plea, coloring the ensuing sentence imposed. We again find defendant cannot show prejudice.

¶ 51 This claim relates to counsel's actions that led to defendant entering the guilty plea. To show prejudice for a claim that counsel's ineffectiveness led to a guilty plea, defendant must show "there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *People v. Hall*, 217 Ill. 2d 324, 335 (2005) (citing *People v. Rissley*, 206 Ill. 2d 403, 457 (2003)).

¶ 52 Even if defendant here should not have been subjected to extended-term sentences, he still entered his guilty plea despite believing he may be subjected to extended sentencing. More importantly, extended-term sentences were neither sought nor imposed in this case. Therefore, any misstatement of law in this regard was not prejudicial. *People v. Riegle*, 246 Ill. App. 3d 270, 275 (1993) ("[N]o prejudice results when a defendant is sentenced within the limits stated to him, even though these statements were understated."); *People v. Cavins*, 288 Ill. App. 3d 173, 179 (1997);

*People v. Felton*, 191 Ill. App. 3d 599, 602 (1989). Because defendant failed to show prejudice for any of his claims, he failed to prove ineffective assistance of counsel.

¶ 53                                III. CONCLUSION

¶ 54     For the foregoing reasons, we affirm the trial court's judgment and sentence.


¶ 55     Affirmed.