NOTICE
Decision filed 02/23/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190184-U

NO. 5-19-0184

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-243 |
| | ) | |
| DYAMOND S. HONORE, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court abused its discretion when it rejected the negotiated sentence and sentenced the defendant to the maximum term of imprisonment for child endangerment because it failed to give sufficient consideration to the mitigating factors, considered facts not in evidence, and considered a factor inherent in the offense as an aggravating factor.

¶ 2    The defendant, Dyamond Honore, pleaded guilty to one count of aggravated battery of her child (720 ILCS 5/12-3.05(b)(2) (West 2016)) and one count of endangering the life of her child (*id.* § 12C-5(a)(1)) in exchange for the State's recommendation of a sentence of four years' imprisonment. The trial court, rejecting the State's recommendation, sentenced her to the maximum sentence of 10 years'

1

imprisonment. On appeal, the defendant's sole contention is that the court abused its discretion in rejecting the recommended sentence and sentencing her to the maximum term of imprisonment. As she is currently scheduled to be released from prison on July 19, 2021,[1] she asks that we reduce her sentence rather than remand for resentencing. For the reasons that follow, we reduce the defendant's sentence to the negotiated sentence of four years.

¶ 3                               I. BACKGROUND

¶ 4      On March 24, 2016, the defendant was charged by a two-count indictment for (1) one count of aggravated battery of a child in that she knowingly caused bodily harm to her child by striking his body and causing bruising, and (2) one count of endangering the life of her child for leaving him in Tiara Johnson's care, which proximately caused his death, while knowing that Johnson had previously inflicted injuries upon him.

¶ 5      On March 2, 2018, the parties signed a plea agreement, which indicated that the defendant would plead guilty to both charges and that her sentencing would be postponed until the completion of Johnson's trial, at which the defendant would provide her full cooperation. In exchange, the State agreed to recommend a sentence of four years' imprisonment to be followed by one year of mandatory supervised release (MSR). In the signed agreement, the defendant acknowledged that the trial court did not participate in the agreement and was not bound by the State's recommended sentence.

---

[1]According to the Illinois Department of Corrections (IDOC) website, the defendant was admitted to the custody of the IDOC on December 20, 2018, and her projected release date for her 10-year sentence is July 19, 2021. See https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx.

¶ 6    During the July 17, 2018, guilty plea hearing, the State recited the factual basis for the plea, indicating that on February 23, 2016, the Washington Park Police Department was dispatched to the defendant's residence after a 9-1-1 call that a child had fallen down the stairs and was unconscious.  The child was identified as the defendant's three-year-old son, and he had been in the care of Johnson, the defendant's girlfriend.  Upon the police officers' arrival, it was evident that the child was already deceased, and the Child Death Investigative Task Force was called to further investigate.  During the investigation, it was discovered that the child had sustained significant, visible injuries that were inconsistent with a fall down the stairs.  The autopsy revealed that the cause of death was homicide caused by abusive head trauma inflicted immediately prior to his death.  The examiner also noted very extensive bruising all over the child's body that appeared to be both fresh and older injuries.  The medical examiner indicated that these types of injuries could not have been caused by a fall down the stairs.  Both the defendant and Johnson were interviewed by the investigators.

¶ 7    During the interview, the defendant indicated that she left her son in Johnson's care that morning when she went to work, and at that time, her son was fine and eating.  However, Johnson later called her at work and said that he had fallen down the stairs.  When she arrived home, she observed that her son was unconscious.  She admitted that she caused "some of the bruising" on her son's body in the days leading up to his death, but she denied causing any injury to his head and causing the fatal injuries.  She also acknowledged that she left her son in Johnson's care knowing that Johnson had previously inflicted injury upon him.

¶ 8     The trial court then admonished the defendant as to her rights and informed her that an aggravated battery to a child conviction carried a potential sentence of 2 to 5 years' imprisonment or 2½ years' probation. The court also admonished her that the sentencing range for child endangerment was 2 to 10 years' imprisonment to be followed by a 1-year period of MSR. The defendant pleaded guilty to both counts. The court then explained to the defendant that it was not bound by the plea agreement at sentencing. After that admonishment, the State asked the court to reconfirm that the defendant wanted to persist in her guilty plea on both counts. The court then asked the defendant whether, after hearing the admonishments, she wanted to change her mind about pleading guilty, and she answered, "no." The court explained that she would have to serve at least 50% of the sentence that she received, and the defendant indicated that she understood. Her counsel waived her right to a presentence investigation (PSI) report, and the court continued the case for sentencing. Counsel did not request a conference pursuant to Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012) to determine whether the court would concur with the plea agreement.

¶ 9     At the October 4, 2018, sentencing hearing, the trial court again explained to the defendant that it was not obligated to follow the State's sentence recommendation. Neither party presented any evidence in aggravation or mitigation. The defendant's counsel then requested that the court accept the sentence recommendation and argued, in mitigation, that the defendant was not the primary offender in her son's death, that she did not know that leaving her child with Johnson would result in his death, that she was remorseful for placing her child in those circumstances, that she did not have any prior

4

criminal history, and that she had fully cooperated with the State in its case against Johnson. In allocution, the defendant acknowledged that she had initially lied to the police about disciplining her child because she was scared, and she had put her son in "harm's way," but she did not know that Johnson might kill him. She expressed remorse for her actions and expressed her wish that she could have testified against Johnson at a trial (Johnson also pleaded guilty). The State made no argument.

¶ 10   After hearing argument, the trial court stated that this was not an accident or a one-time incident but instead the defendant's son was "beaten to death over a period of time." The court noted that the autopsy photographs, which were not introduced into evidence, were "demonstrative evidence" of what the child had experienced. The court explained that the child had extensive bruising and contusions from his head to his toes on his front side and on his back side and that the wounds were both fresh and older. The court stated that there was no doubt in its mind that the defendant had known how badly the child was being mistreated and that the defendant had participated in the beatings. The court indicated that the case was "ghastly" and that the defendant had endangered the child's life. The court then announced that it was sentencing her to 10 years' imprisonment. At this point, the State noted that in light of the court rejecting the sentence recommendation, the sentence should be reserved until the completion of a PSI. The court then ordered a PSI and continued the case for sentencing. The defendant's counsel again made no request for a conference pursuant to Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012).

¶ 11    On December 3, 2018, the defendant's PSI was completed, which indicated that she was 20 years old in February 2016 and had one child.  Her father was in prison in Florida, and her mother lived in California.  She attended school through the eleventh grade and had been enrolled in a medical assistant training program in California but withdrew when she moved to Illinois in January 2016.  She had been steadily employed between 2015 and 2018.  In 2016, she admitted herself to a hospital and was diagnosed with anxiety and depression.  She was not currently under a doctor's care or taking medication, and she stated that her present physical health was good.  She did not use alcohol or drugs and had never been treated or evaluated for substance abuse.  Other than the charges at issue here, she had no criminal history.  On May 3, 2017, she married Kevina Johnson, and they were still together.

¶ 12    On December 12, 2018, the trial court held a subsequent sentencing hearing.  At the hearing, the court again indicated that it had decided to reject the State's sentence recommendation and impose a longer sentence.  The defendant presented the court with letters from six people who attested to her good character, described her as a loving and caring person, and witnessed her love for her son.  Neither party presented any evidence in mitigation or aggravation.

¶ 13    During argument, the State requested that the trial court accept its recommended sentence of four years' imprisonment.  In making this argument, the State noted that the defendant was young at the time of the offense and had no criminal history.  The State argued that the evidence showed that the defendant did not know the extent to which Johnson was capable of injuring the child, and although the child had some older

6

bruising, there was nothing to indicate that the defendant knew Johnson would ultimately cause his death. Specifically, the State noted that the child had no preexisting head injuries, before the lethal blow inflicted by Johnson, that would have indicated to the defendant that her son was being "repeatedly struck in the head on a regular basis." The State also noted that during the investigation, the defendant was cooperative with the investigators and took a polygraph examination; the examiner found that she was truthful when she denied causing the injuries to her son's head, denied causing his death, and denied seeing anyone else strike him on the head. The State then argued that the defendant was charged "most severely" based on the evidence and that the evidence did not support a charge requiring a higher level of culpability. The State noted that there appeared to be some history of prior abuse to the defendant by Johnson, which might have clouded her judgment, and that the defendant was "very remorseful for her actions." Although the State acknowledged that this was a severe case, it based its recommendation on the defendant's degree of culpability and her lack of criminal history.

¶ 14 Defense counsel then argued, in mitigation, that the defendant's conduct did not personally cause or contemplate serious harm to her son and that she was not the principal offender in the child endangerment charge. Counsel also noted that the defendant had a steady work history, had no criminal history, had mental-health issues, and was cooperative with the State's prosecution of Johnson.

¶ 15 In allocution, the defendant said that she got pregnant when she was 16 years old and did not finish high school; she did not get much assistance from her family, and the baby's father was not around. She was living "in and out of hotels" and was suicidal at

7

times after she had her son. Her mother was verbally and emotionally abusive and was a single mother. She moved from California to Illinois with Johnson because she felt like Johnson was her only support. She described Johnson as verbally and emotionally abusive and related incidents where Johnson had demonstrated manipulative behavior toward her. She expressed her love for her son and regret for staying with Johnson.

¶ 16 After hearing arguments and the defendant's statement in allocution, the trial court stated that although this was a very difficult case, it was not a case of "one bad choice." The court noted that it had listened to the defendant's statement for any acceptance of responsibility, but the defendant had deflected all responsibility onto someone else and did not provide any examples of how she had protected her son. The court agreed that the defendant's childhood was "very sad" and her life was "very rough" but noted that the evidence was overwhelming that her son had been subjected to serious physical abuse over a period of time. The court indicated that it did not believe the defendant when she claimed that she did not know about the abuse and that she was being manipulated by Johnson. The court noted that the defendant had pled guilty to knowing Johnson had previously injured her son but continued to leave him in Johnson's care, which was the proximate cause of his death. As for mitigating factors, the court noted that the defendant had a rough childhood and that she was young. However, the court noted that there was no reason why the defendant tolerated the physical abuse that her son suffered and that it strongly suspected that the physical abuse "was manifesting itself not only with physical signs of abuse but emotional and psychiatric signs of abuse." The court further noted that it had considered the fact that the defendant entered into a cooperation agreement with

8

the State but explained that it was in a position to review the evidence with a "fresh pair of eyes," and it did not believe everything that the defendant had said. The court indicated that the defendant was in a position to defend her son and remove him from that environment, but she failed to do so. The court then sentenced her to 10 years' imprisonment for the child-endangerment conviction and a concurrent term of 5 years' imprisonment for the aggravated-battery conviction.

¶ 17 On January 7, 2019, the defendant filed a motion to reconsider the sentence, arguing that the trial court's sentence was excessive. Also, on January 11, 2019, the defendant filed a motion to withdraw her guilty plea, arguing that although she did not want to plead guilty, she had relied on the State's assurance that she would receive a sentence of four years' imprisonment if she accepted the plea deal. She also contended that her counsel had advised her to accept the plea deal, "mistakenly believing that the terms of the [p]lea [a]greement would be honored" by the court.

¶ 18 On April 3, 2019, the defendant's counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). That same day, the trial court denied the defendant's motion to withdraw her guilty plea and her motion to reconsider sentence. The defendant appeals.

¶ 19                                    II. ANALYSIS

¶ 20 The defendant's sole contention on appeal is that the trial court abused its discretion in rejecting the State's recommended 4-year sentence and instead sentencing her to 10 years' imprisonment. Because she is scheduled to be released from IDOC custody in July 2021, she requests that we reduce her sentence pursuant to our authority

9

under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) rather than remanding to the trial court for resentencing.

¶ 21   As an initial matter, we must first determine whether this defendant, whose sentence exceeded the negotiated terms after the procedure converted into a hearing more akin to an open plea sentencing hearing, is permitted to challenge her sentence after she abandoned her claim that she was entitled to withdraw her guilty plea.  In *People v. Johnson*, our supreme court recently reiterated the rule that, pursuant to Illinois Supreme Court Rule 604(d), a defendant who enters into a plea where the State makes sentencing concessions is bound by that plea unless defendant first moves to withdraw the plea. *People v. Johnson*, 2019 IL 122956, ¶¶ 46-47; see also *People v. Linder*, 186 Ill. 2d 67, 74 (1999) (where the sentence imposed is within the agreed-upon cap, allowing defendant to seek reconsideration of his sentence without also moving to withdraw his guilty plea unfairly binds the State to the terms of the plea agreement while giving defendant the opportunity to avoid or modify those terms).  The *Johnson* court concluded that this rule applies regardless of whether the claimed error was an excessive sentence or whether it was alleged the court relied upon improper sentencing factors during sentencing. *Johnson*, 2019 IL 122956, ¶¶ 39-41.  In making this decision, the court distinguished its previous decision in *People v. Heider*, 231 Ill. 2d 1 (2008), where it remanded for a new sentencing hearing on the basis that the sentencing court relied upon improper sentencing factors but did not require defendant to withdraw his guilty plea before the sentence could be modified. *Johnson*, 2019 IL 122956, ¶ 51.  The court noted that *Heider* was distinguishable because the *Heider* court had dealt with an imposed

sentence that exceeded the agreed-upon plea and because the court was not asked to consider the facts of the case in view of Rule 604(d). *Id.*

¶ 22 Here, the defendant entered into a negotiated guilty plea in which the State agreed to recommend a four-year sentence. Although the State did uphold its bargain by recommending the agreed-upon sentence, the trial court rejected that recommendation and sentenced her to 10 years' imprisonment. Once the court indicated that it was rejecting the negotiated sentence, the sentencing procedure converted into a hearing more akin to an open plea where the parties presented arguments in aggravation and mitigation, and the court exercised its full discretion in imposing the sentence. See *People v. Diaz*, 192 Ill. 2d 211, 221 (2000). Because the proceedings became analogous to sentencing proceedings following an open plea, and the defendant's sentence exceeded the scope of the negotiated plea terms, we can consider the defendant's sentencing argument, even though she abandoned her claim that she was entitled to withdraw her plea. We now turn to the issue of whether the defendant's sentence was an abuse of discretion.

¶ 23 Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) gives reviewing courts the authority to reduce a sentence imposed by the trial court once it is determined that the court's sentence was an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 376 (1995). While the trial court is afforded broad discretion in sentencing, that discretion is not without limitation. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The power of the appellate court to reduce an excessive sentence should be exercised cautiously and sparingly. *Jones*, 168 Ill. 2d at 378.

11

¶ 24 The imposition of a sentence will not be altered upon review absent an abuse of discretion. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. An abuse of discretion occurs where the court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view. *People v. Taylor*, 2011 IL 110067, ¶ 27. When a sentence falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Stacey*, 193 Ill. 2d at 210.

¶ 25 The Illinois Constitution requires that the sentence imposed by a trial court "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26. Not only must the sentencing court consider rehabilitative factors in imposing the sentence, it must also make rehabilitation an objective of the sentence. *People v. Wendt*, 163 Ill. 2d 346, 352-53 (1994).

¶ 26 Here, the offense of child endangerment where defendant's act is the proximate cause of the child's death is a Class 3 felony, and the statutory penalty range is 2 to 10 years' imprisonment. See 720 ILCS 5/12C-5(d) (West 2016). Thus, although the defendant's 10-year sentence was the maximum penalty, it was within the sentencing range. However, after carefully reviewing the record, we conclude that the trial court did

12

not give sufficient consideration to the mitigating factors, many of which were presented by the State itself, and the record did not support the court's decision to reject the agreed-upon sentencing recommendation and impose the maximum sentence. The evidence presented at the sentencing hearing indicated that the defendant was 20 years old at the time of the offense, had no previous criminal history, and had been diagnosed with anxiety and depression. After what the court agreed was a "rough childhood," the defendant left school when she got pregnant at the age of 16 and moved to Illinois with Johnson, who was her then-girlfriend. She remained steadily employed to support her son, but she felt dependent on Johnson for childcare and for her support system; her mother was not supportive and was verbally and emotionally abusive. Although there was no question that the defendant left her son in Johnson's care, knowing that Johnson had injured him previously, there was no evidence that she knew, or should have known, that Johnson was capable of killing her son. Specifically, at sentencing, the State argued that the defendant did not know the extent to which Johnson could hurt the child and even noted that the defendant had taken a polygraph examination, which indicated that she was truthful when she denied seeing anyone hit her son in the head.

¶ 27 Also, the defendant's conduct following her arrest showed strong rehabilitative potential in that she remained employed after she was released on bond, she gave her full cooperation in the State's case against Johnson, and the State agreed that she was remorseful for her actions. She also presented letters from six people attesting to her character and describing her as a caring person and mother. After considering the evidence of the offense and the defendant's conduct since the offense, the State

13

determined that society's interest in punishing the defendant would be satisfied by a four-year sentence. It strongly advocated for the defendant to receive that sentence, which undermines any conclusion that the defendant posed so serious a future threat that the maximum sentence was required to protect the public.

¶ 28    Moreover, the defendant contends that in imposing the 10-year sentence, the trial court improperly considered facts not introduced into evidence and a factor inherent in the offense of child endangerment.[2] The court based its sentencing determination on its conclusion that the abuse of the defendant's child was not merely a one-time event but instead reflected a pattern of physical abuse toward him. In concluding this, the court opined that the defendant's son must have manifested emotional and psychiatric signs of abuse. The court also cited to the autopsy photographs, which reportedly showed evidence of previously inflicted injuries, and stated that the photographs were "demonstrative evidence" of the defendant's knowledge of the abuse that her son had suffered. However, the State did not introduce the autopsy photographs into evidence, nor was there any evidence presented of psychiatric symptoms displayed by the defendant's son. Also, the defendant contends that the court considered a factor inherent in the offense in aggravation at sentencing. In aggravation, the court considered the fact that the defendant knew that Johnson had injured her son but continued to leave him in Johnson's care. As this was implicit in the offense of child endangerment, the court

---

[2]In setting forth this argument, the defendant acknowledges that she did not properly preserve this issue for review, as it was not raised in her posttrial motion. Nevertheless, she maintains that we may review the unpreserved issue under the first prong of plain-error review because a clear or obvious error occurred, and the evidence at the sentencing hearing was closely balanced. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

14

improperly relied upon it as an aggravating factor when fashioning the sentence. See *People v. White*, 114 Ill. 2d 61, 65-66 (1986) (a court may not rely upon factors inherent in the offense in aggravation at sentencing).

¶ 29 While the trial court has discretion in sentencing, the exercise of that discretion has limits and is not totally unbridled. See *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42; *Daly*, 2014 IL App (4th) 140624, ¶ 26 (the appellate court was not meant to be a rubber stamp for the sentencing decisions of trial courts). Given the specific circumstances present in this case, we find that the trial court abused its discretion in exceeding the negotiated term and sentencing the defendant to the maximum term of imprisonment for the child-endangerment conviction. We choose to exercise our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to reduce the defendant's sentence to the four-year negotiated term. See *Daly*, 2014 IL App (4th) 140624, ¶ 40 ("A reviewing court is empowered under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to reduce a sentence where *** the trial court abused its discretion in sentencing a defendant.").

¶ 30                                III. CONCLUSION

¶ 31 For the foregoing reasons, we reduce the defendant's sentence to four years' imprisonment for the offense of child endangerment.


¶ 32 Sentence reduced.