NOTICE
Decision filed 10/14/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240209-U

NO. 5-24-0209

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 23-CF-116 |
| | ) | |
| BLAKE L. PHELPS, | ) | Honorable |
| | ) | Douglas C. Gruenke, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the trial court did not err in denying the defendant's motion to withdraw his guilty plea, and postplea counsel strictly complied with Illinois Supreme Court Rule 604(d), we affirm.

¶ 2    The defendant pled guilty to aggravated domestic battery and was sentenced to nine years of imprisonment in the Illinois Department of Corrections to be followed by four years of mandatory supervised release. He filed four separate motions to withdraw his guilty plea and vacate his sentence. Postplea counsel was appointed and ultimately filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Oct. 19, 2023). Following a hearing on the defendant's claims, the trial court denied his motion. The defendant appeals asking this court to remand the case for the appointment of new counsel. He claims that postplea counsel failed to both ascertain

1

his contentions of error and make necessary amendments to his motion to withdraw guilty plea. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On May 22, 2023, the defendant was charged with aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), 12-3.3(a-5) (West 2022))—a Class 2 felony. He was also charged with two misdemeanors: interfering with the reporting of domestic violence (*id.* § 12-3.5(a)) and criminal damage to property (*id.* § 21-1(a)(1)). The defendant was in a domestic relationship with the victim, Lindsay Trusty (Trusty), and they had a child together. The incident that led to the charges against the defendant occurred in the couple's home. The Clinton County Public Defender, Stewart A. Freeman (Freeman), entered his appearance on behalf of the defendant on May 22, 2023.

¶ 5        On July 5, 2023, the trial court held a pretrial hearing to address issues the defendant had with his attorney, Freeman. Freeman informed the trial court that the defendant wanted probation on the aggravated domestic battery charge, and that he had repeatedly told the defendant that: "It's not happening." After Freeman advised the defendant that probation was not possible, the defendant told him that he wanted to fire him and alleged inadequate legal assistance. The court asked the defendant to specify how his attorney had not provided "adequate legal assistance." The defendant stated that Freeman continued to try to get him to plead guilty to "something [he] didn't do" and that he had asked him to "do things" and he believed that Freeman "don't want to do his job." When pressed for specifics, the defendant informed the court that he had given Freeman a list of motions to file, but he only filed one "because he thinks you won't let them in." Freeman advised the trial court that the motions the defendant wanted filed had no legal basis. The defendant also informed the court that Freeman said he did not "give an F" if he went to prison. Freeman denied that he made that statement. The trial court then explained what decisions the defendant

2

had the power to decide, including whether to represent himself, whether to plead guilty or not guilty, whether to go to trial, and if found guilty, whether to appeal. The court stated:

> "Just about everything else is up to your defense attorney with the strategy. He can determine what motions to file, what motions not to file. He can determine what witnesses to call and what witnesses not to call. If you don't have an attorney, then you get to make those decisions. But I can guarantee you that you aren't as trained in the law as [your attorney] is. But if you, would like to represent yourself, I will let you do that."

¶ 6 The defendant then questioned if Freeman had a conflict of interest because he had represented "people in the past against me. *** So if he's been against me in the past, how do I know he's for me now." Freeman expressed his confusion about these statements as he had not been a prosecutor. The defendant said that Freeman took his kids from him and explained that he had represented his "drug addicted baby momma[ ]" and made the defendant look bad in that case.

¶ 7 The trial court informed the defendant that he was not going to remove Freeman from the case and stated that the defendant did not provide him with information to support his claim that Freeman was providing ineffective assistance. The defendant stated that the court was not giving him a choice but ultimately stated that he would continue with Freeman as his attorney.

¶ 8 On July 10, 2023, the court held a pretrial hearing. The defendant was present and acknowledged that the State had presented him with another plea offer for the same number of years and that they would not charge him with crimes stemming from phone calls he made from the county jail. The State's offer to allow the defendant to plead open in exchange for a cap on the State's sentencing recommendation was rejected. Freeman informed the court that he had recommended that the defendant accept both of those offers. Freeman informed the court that he spoke with the victim, who advised that she had engaged in phone conversations with the defendant

at the Clinton County jail that were recorded. Freeman said the State had not yet listened to them. The State offered not to charge any new offenses based on the content of those conversations if the defendant accepted the plea offer. After the court and counsel held a Rule 402(d) conference (Ill. S. Ct. R. 402(d) (eff. July 1, 2012)), the defendant rejected the State's offer of eight years, stated that he wanted to go to trial, and stated that he was going to attempt to hire private counsel.

¶ 9 The next court hearing was held on July 14, 2023, during which the State announced additional charges it was filing based upon the defendant's telephone conversations with Trusty. These charges involved the defendant's attempt to impact Trusty's anticipated testimony, including subornation of perjury (720 ILCS 5/32-3(a) (West 2022)), witness harassment (*id.* § 32-4(a)), and witness tampering (*id.* § 32-4(b)). When the trial court asked the defendant if he understood the charges and the possible penalties, the defendant became argumentative and repeatedly said that he did not understand. The court ultimately concluded that he did understand the charges and potential penalties and stated that the defendant would be held in contempt of court if he did not stop arguing. The trial court asked the defendant if he wanted an attorney for these new charges, to which the defendant responded: "not this one"—meaning Freeman—before stating that he would represent himself. The State then provided a factual basis for the new charges, after which, the trial court found probable cause to detain the defendant.

¶ 10 Later during the July 14, 2023, hearing, Freeman informed the court that he had received a new plea offer from the State—nine years for the aggravated domestic battery charge and dismissal of the original two misdemeanor charges and the three new charges. The trial court encouraged the defendant to communicate with Freeman. After a break, court resumed the hearing, and the defendant accepted the State's offer.

4

¶ 11    During the plea hearing, the trial court admonished the defendant regarding the new charges and his rights, and he said he understood. The defendant confirmed that he signed the guilty plea and waiver of jury trial documents; indicated that no one had forced, threatened, or coerced him to plead guilty; and stated that no one had made additional promises to him. The following exchange occurred during the court's acceptance of the defendant's plea:

"THE COURT: And the State and your attorney have indicated to me that in exchange for your plea of guilt on that count, you will be sentenced to nine years to the Illinois Department of Corrections. That's an 85 percent sentence. To be followed by four years of mandatory supervised release.

You will receive credit for 56 days of actual time spent in custody so far. *** And then all other matters would be dismissed, pursuant to that plea. ***

* * *

THE COURT: *** Do you understand *** [t]he actual penalties?

THE DEFENDANT: Yes, sir."

¶ 12    The State proffered the factual basis. Officer Stephen Perry of the Centralia Police Department would testify that he had met with the victim, Lindsay Trusty, on May 21, 2023. Trusty informed Officer Perry that she and the defendant had been arguing. She asked him to leave the residence and threatened to call the police. The defendant grabbed her by the throat and took her phone. The argument continued, and the defendant held Trusty down on the ground and applied pressure to her throat which prevented her from breathing. Later the defendant let Trusty go, and she went to work. Trusty then reported the incident to Officer Perry who noted that Trusty's back, sides of her neck, chest, and nape of her neck had red marks. The trial court found that the State established a factual basis for the defendant's plea. The court then found the defendant guilty of

aggravated domestic battery and sentenced him to nine years' imprisonment plus four years of mandatory supervised release.

¶ 13    Three days later, on July 17, 2023, the defendant filed a motion to withdraw his guilty plea and to vacate his sentence. He contended that there was a conspiracy against him; that he was threatened, forced, and intimidated by the State; that the victim did not want him to go to prison; that Freeman provided ineffective assistance and told him he was stupid; that he tried to fire Freeman in court; and that he had multiple heated arguments with his attorney during which they had to be separated.

¶ 14    On July 21, 2023, the court held a hearing regarding the defendant's July 17, 2023, motion to withdraw his guilty plea. Because of the ineffective assistance allegation, the court appointed another attorney to represent the defendant.

¶ 15    On July 28, 2023, the defendant filed a second *pro se* motion to withdraw his guilty plea and a separate motion to reconsider his sentence. He argued that his plea was founded on coercion and manipulation by his attorney. In support, he contended that he thought he would receive a lesser sentence; that his attorney "did absolutely nothing to test the State[']s case and coerced me to plea because of his unpreparedness"; that his attorney knew he was "mentally impaired"; that he had attention-deficit/hyperactivity disorder; that his attorney was ineffective; that he was under duress and "not *** in the right state of mind"; that the sentence was "excessive and harsh"; that he was "drug to court on a day I did not have a court date and being coerced to take plea 2 days before trial"; and that the trial court improperly considered whether his conduct caused serious harm.

¶ 16    On August 3, 2023, the defendant filed a third motion to withdraw his guilty plea and vacate his sentence supported by his affidavit. In the affidavit, the defendant asserted the following

claims: (1) ineffective assistance of counsel for failing to file certain motions, failing to subpoena requested witnesses, failing to review the file with him, and constant fights where Freeman called him stupid; (2) that the plea was entered "through misapprehension of the facts or of the law" in that he believed his sentence would be served at 50% and that he would not receive "4 years of MSR"; (3) that he was "rushed" into the plea because Freeman was unprepared for trial and was thus, ineffective; (4) that the judge separately considered a factor inherent in the charge to which he pled, which was improper; (5) the judge engaged in "conduct" because he was aware of the conflicts between the defendant and Freeman; (6) that Freeman submitted no evidence to help prove the defendant's innocence; (7) that the defendant "was not in the right state of mind and was brought to court on a day [he] did not have court"; (8) that the victim, Trusty, "is being forced" to pursue these charges; (9) that his sentence was improper based upon a comparison of sentences other defendants received for similar or worse offenses; and (10) that the victim had repeatedly stated that she only wanted the defendant to receive probation and rehabilitation.

¶ 17    On October 30, 2023, the defendant filed his fourth pleading attacking his plea noting that the trial court has the discretion to permit withdrawal of his plea. The defendant provided supportive caselaw for his earlier petitions. However, he stated that his "plea was entered on a misapprehension of the facts and of the law, but also by misrepresentation of counsel." He does not indicate what the issues were with the facts, law, or counsel, but said that he had "a defense worthy of consideration." After citing various cases, the defendant concluded his pleading with the following statement: "I am innocent[,] and the evidence shows no strangulation. I was off of my psychotropic medicine and not clear headed."

¶ 18    On December 5, 2023, the defendant's postplea counsel filed a Supreme Court Rule 604(d) certificate. Ill. S. Ct. R. 604(d) (eff. Oct. 19, 2023). In his certificate, the attorney stated that he

7

had (1) consulted with the defendant to ascertain his claims of error in the entry of his guilty plea and in his sentence; (2) examined the trial court file and the report of proceedings from the guilty plea and sentencing hearing; and (3) made any amendments to the motion necessary to the adequate presentation of the defendant's claims. *Id.* Postplea counsel did not file an amended pleading.

¶ 19     On January 24, 2024, the case was called for a hearing on the defendant's motion to withdraw his guilty plea. The court noted that the defendant had sent multiple letters/motions to the court, some of which the court had stricken because postplea counsel had been appointed to represent the defendant.[1] The court found that there were 14 allegations in the defendant's motion to withdraw his plea, and noted that the defendant's alternative request to reduce sentence could not be allowed because the plea had been negotiated. Postplea counsel informed the court that the motion to withdraw the defendant's guilty plea contained 10 issues. The discrepancy in the number of allegations was not addressed by postplea counsel or the trial court.

¶ 20     The defendant testified at this hearing. He confirmed that three days before the trial was scheduled to begin, he was brought over to the courthouse to be arraigned on new charges. Prior to that hearing, he had only spoken with Freeman a couple of times and had never reviewed discovery materials or discussed trial strategy. The defendant testified that he had asked Freeman to subpoena a couple of Centralia Police Department officers to testify at his trial. He does not believe that subpoenas were issued for these officers and stated that he sought this testimony to provide context about prior police calls involving him and Trusty. Upon arrival at the courthouse on the date of his plea, Freeman advised him about the new charges and told him that "he wanted to make sure I got double digits." He stated that he had never had an agreeable conversation with

---

[1]The record on appeal does not contain any order striking any of the referenced letters/motions.

Freeman and that "a few times" he and Freeman had to be separated because Freeman got angry that the defendant would not accept a plea offer and would tell the defendant he was "stupid." The defendant testified that he did not believe that Freeman was prepared for trial, which was scheduled three days after the day he pled guilty.

¶ 21    The defendant agreed that later that day, he pled guilty, but stated that he felt coerced:

"Because I feel like I had no choice because basically we hadn't been over my discovery or how we were even going to fight the case if we do go to trial. And basically, because he is telling me that if I don't take his plea, he's—he feels I am guilty and that he's going to make sure and help the state in getting me double digits."

¶ 22    The defendant testified that although he had been prescribed medication for "ADHD, ADD, ODD, anxiety, and compulsive disorder," he was not receiving his medication at the Clinton County jail because his prescription "didn't go through." Currently, he is receiving different medication for these mental health conditions in the Illinois Department of Corrections.

¶ 23    On cross-examination, the State inquired why the defendant wanted to have a Centralia police officer subpoenaed for trial. The defendant testified that this officer would testify that on previous domestic calls, he "was always calm, cool, and collected and that, you know, there was never nothing that ever happened physical or anything like that *** and he would separate us and tell us I can come back when everything was calmed down, so basically the next morning." He also indicated that although he and Freeman had been "separated" from each other at times, Freeman did not have to be stopped from "coming at" him, and he did not fear that he would hurt him.

¶ 24    On redirect examination, the defendant testified that he vaguely remembered the day of his plea. He acknowledged that he was untruthful to the court when he said that he had not been

9

threatened to take the plea. The State reminded the defendant that he had refused to communicate with Freeman before the hearing about the case or his anticipated trial testimony. In response, the defendant again complained that he had never seen the State's evidence against him.

¶ 25 The State then called Freeman, who testified that he was the current Clinton County Public Defender. He testified that with new clients, he always asked if they had any psychiatric or medical conditions. When asked these questions, the defendant denied having any such issues. When asked those questions again during his second meeting with Freeman, the defendant again denied having any psychiatric or medical conditions.

¶ 26 Freeman said that he went over the discovery material he received from the State with the defendant on June 12, 2023, reading all of it out loud to the defendant. He confirmed that the defendant wanted to call a Centralia police officer to testify but stated that he disagreed with the defendant because the expected testimony from this officer would have provided damaging details of previous police visits to the home of the defendant and Trusty regarding domestic violence.

¶ 27 Before the final pretrial hearing, Freeman testified that he spoke with Trusty who confirmed that the defendant choked her, that she did not want to testify against him, and did not want him to receive a long prison sentence. However, Trusty told Freeman that if she was required to testify, she would testify truthfully about what occurred.

¶ 28 Freeman testified that in preparing for trial, he listened to approximately 20-30 hours of telephone conversations between the defendant and Trusty recorded at the Clinton County jail. Overall, he stated that preparation for this trial would not have been difficult because the case was not complex. Freeman denied telling the defendant that he was going to help the State get him a long prison sentence. He acknowledged that he may have told the defendant that not accepting the plea deal would be "stupid" but denied that he referred to the defendant as "stupid."

¶ 29 In arguments to the trial court, postplea counsel stated that on the date of the plea the defendant had not been given his medication; he felt that his attorney was unprepared; that his relationship with Freeman had seriously deteriorated; and he believed that he had no choice but to enter the plea—that he was under duress.

¶ 30 The trial court commented on multiple issues raised by the defendant in his motion to withdraw his guilty plea.[2] The court also addressed additional issues argued by postplea counsel. The trial court noted that there were no details in the motion, or in the defendant's testimony, about what "judge conduct" was at issue. Regarding "being dragged to court by numerous officers," the court noted that the defendant had to be brought to court because new charges were filed against him, and multiple officers were involved because the defendant had refused to go to court that day. The court concluded that being forced to go to court to face new charges was not a basis for duress. Regarding the issue of being "threatened," the court stated that there were no facts or testimony supporting this claim. The court also found that subpoenaing Trusty to testify did not amount to force or intimidation by the State. Additionally, Trusty's alleged statement that the defendant had been "punished enough," was not a decision that the victim could make. As the defendant acknowledged that there were no motions he wanted Freeman to file, the trial court found that the defendant waived this claim. The trial court concluded that Freeman likely told the defendant that refusing the plea offer was "stupid." The court acknowledged that during an early hearing in this case, the defendant tried to fire Freeman but indicated that the defendant failed to establish at that time how he was ineffective, and thus the court concluded there was no basis to the allegation. The court also acknowledged that the defendant and Freeman likely had heated conversations during

_____

[2]The trial court failed to identify which of the defendant's four motions he was ruling on. The trial court noted that the motion had 14 issues. Since only the July 17, 2023, motion had 14 issues, we assume that this was the motion the trial court ruled upon.

11

the case but concluded that any heated conversations about whether to accept the plea offer provided no foundational support for his request to withdraw the plea. Finally, the court found that the defendant's citations to other comparable cases where lesser sentences were imposed did not establish that the defendant's sentence was inappropriate as "[e]ach defendant is sentenced based on their own case, not based on what happened in other cases."

¶ 31 The trial court found that Freeman was not ineffective, noting that had Freeman called the Centralia police officer to testify about other instances of domestic violence between the defendant and Trusty, the State would have been able to introduce evidence of other domestic violence situations which required police involvement. The court found that the defendant's argument that Freeman was not ready for trial to be purely speculative. Further, the fact that Freeman had not met with the defendant the week before trial was because of the defendant's refusal to do so. Moreover, Freeman provided detailed testimony about how he had been preparing for trial, including anticipated jury instructions.

¶ 32 Regarding the allegation that the defendant was not on his medication, the trial court noted that the defendant testified that he had not been on any medicine prior to being arrested on this offense, and the medication was only prescribed, but not filled, while he was in the Clinton County jail. There was no evidence presented that he needed that medication to participate in the plea hearing or that he ever told Freeman about his psychiatric medication prescription or needs. The defendant's testimony established that no medication was provided until he was transferred to the Illinois Department of Corrections.

¶ 33 The trial court stated that the defendant's claim—that Freeman threatened to help the State get him a longer sentence if he did not agree to the plea—was not credible. The court concluded

that the defendant's plea was made knowingly and voluntarily and denied his motion to withdraw his guilty plea. The defendant timely appealed.

¶ 34                                    II. ANALYSIS

¶ 35    The defendant argues on appeal that postplea counsel failed to make the necessary amendments to his motion to withdraw his guilty plea to adequately present his claims to the trial court as required by Rule 604(d). Rule 604(d) sets forth the procedures that a defendant must follow to appeal from a judgment entered on a guilty plea. Ill. S. Ct. R. 604(d) (eff. Oct. 19, 2023). Rule 604(d) states: "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." *Id.* The defendant is required to file a motion to reconsider the sentence within 30 days after imposition "if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." *Id.* Here, the defendant filed a timely written postjudgment motion asking the court to allow him to withdraw his plea and to vacate his sentence.

¶ 36    Rule 604(d) also states: "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.* Here, the defendant's attorney filed his Rule 604(d) certificate with the trial court on December 5, 2023.

13

¶ 37    We begin our analysis by reviewing postplea counsel's Rule 604(d) certificate, which was filed on December 5, 2023, and stated:

> "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;
>
> 2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

We conclude that the certificate is facially valid. However, if the record contradicts the statements in the certificate, the case must be remanded. *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14.

¶ 38    The defendant argues that the trial court summarily dismissed some of his four *pro se* motions at the hearing on his motion to withdraw his guilty plea and/or his motion to reconsider sentence. Appointed postplea counsel informed the trial court that he would argue the "motions" as they had been drafted by the defendant. The defendant contends that counsel never specified which of the four *pro se* motions he was pursuing, and thus, this statement refutes the language of his Rule 604(d) certificate that he had taken steps to ascertain the defendant's claims of error. The trial court stated that the motion contained 14 issues, while postplea counsel stated that the motion contained 10 issues. From our review of the record on appeal, we note that the July 17, 2023, motion had 14 issues, while the July 28, 2023, motion had 10 issues. Additionally, the August 3, 2023, motion had 10 issues, while the October 30, 2023, motion combined issues and cited caselaw.

14

¶ 39    The record on appeal is confusing because neither postplea counsel nor the trial court identified which of the defendant's motions—or all of them—were being considered. While the trial court seemed to indicate that some of the defendant's motions were stricken, the record is unclear. Having reviewed all four of the defendant's motions, we acknowledge a significant overlap in the issues raised, which contributed to confusion during the hearing. While such confusion does not preclude our review, this case underscores the requisite responsibility of the trial court to make a complete and accurate record.

¶ 40    We suspect that the trial court and postplea counsel were referencing the first two of defendant's *pro se* motions. However, we note that postplea counsel informed the court that he had "received a handful of *** letters or motions [filed by the defendant] one of which was filed on October 30, 2023," and that he had reviewed the defendant's "motions," discussed the motions with the defendant, and planned "to argue the motions as they are." So, we believe that postplea counsel reviewed and argued issues from all four of the defendant's motions. Thus, our review will include all four of the defendant's motions on these issues because all four motions remained pending when the trial court entered its ruling.

¶ 41    "Leave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice under the facts involved." *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). If the defendant entered his guilty plea based upon a misapprehension of the facts or the law, the defendant should then be allowed to withdraw his plea. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). The defendant has the burden of proof to demonstrate "the necessity of withdrawing his plea." *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993). The trial court has the discretion to decide if a guilty plea may be withdrawn. *Davis*, 145 Ill. 2d at 244. At a hearing on a motion where the defendant seeks to withdraw his guilty plea, the trial court must assess the credibility of the

15

witnesses. *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005). We review the trial court's denial of a motion to withdraw a guilty plea with the abuse of discretion standard, meaning that we will only find that the trial court abused its discretion if the ruling is arbitrary, fanciful, or unreasonable. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).

¶ 42    We turn to the defendant's claims in support of his withdraw guilty plea. The defendant's four *pro se* motions considerably duplicated his claims of error. Although three of the four motions contained at least 10 issues, we have reviewed all issues raised and find that the issues can be organized into nine distinct categories. Those categories are: (1) ineffective assistance of counsel for not filing requested motions, not subpoenaing a police officer, not going over the evidence against the defendant, not being prepared for trial and thus making the defendant feel "rushed," not submitting evidence to prove innocence, and for "constantly" arguing with the defendant, including telling the defendant he was guilty, threatening to help the State get a "double digit" sentence, and calling him "stupid"; (2) judicial conduct in sentencing the defendant by improperly considering that the defendant's conduct caused serious harm when that factor was inherent in the aggravated domestic battery charge, and because the judge was aware of the conflicts/fighting between the defendant and plea counsel; (3) the defendant's mental impairment with attention-deficit/hyperactivity disorder, without "psychotropic" medication being provided by the Clinton County jail resulting in the defendant not being "in the right state of mind" on the day of his plea; (4) being "dragged" into court for arraignment on new charges: (5) the defendant was under "duress," was "threatened," "was coerced," "was forced/intimidated by the State," and there was a conspiracy against him; (6) the defendant attempted to fire his attorney in court; (7) excessive sentence and the sentence was inconsistent with what other defendants in other cases received; (8) the defendant's victim did not want to pursue charges against him and the victim only wanted

16

the defendant to be sentenced to probation and rehabilitation; and (9) the defendant was under a misapprehension of the facts and law because he thought his sentence would be served at 50% and without four years of mandatory supervised release. We will briefly address each category and thereafter consider whether the defendant's postplea counsel failed to ascertain and present the defendant's stated claims.

¶ 43                    A. Ineffective Assistance of Counsel

¶ 44    The defendant testified that he had only spoken to Freeman a couple of times, never reviewed discovery, and wanted him to subpoena a Centralia Police Department officer who could provide relevant information about past incidents at his home. He testified that Freeman wanted him to plead guilty on the original charge to avoid the new charges. He also testified that he did not believe that his attorney could possibly be ready for trial within three days.

¶ 45    "If a defendant does not make a valid ineffective assistance claim, [he] does not trigger the need for the trial court to inquire." *People v. King*, 2017 IL App (1st) 142297, ¶ 15 (citing *People v. Taylor*, 237 Ill. 2d 68, 75-77 (2010)). "Mere awareness by a trial court that defendant has complained of counsel's representation imposes no duty on the trial court to *sua sponte* investigate defendant's complaint ***." *People v. Washington*, 2015 IL App (1st) 131023, ¶ 11.

¶ 46    The trial court did not indicate that the defendant's complaints about his attorney warranted a *Krankel* hearing (*People v. Krankel*, 102 Ill. 2d 181 (1984)); nevertheless, the trial court addressed the defendant's complaints during the July 5, 2023, hearing. The court stated that the defendant's claims that his attorney was ineffective had no merit; that the defendant maintained the right to hire his own attorney or represent himself; and that otherwise, he did not have the right to "choose" his appointed attorney.

17

¶ 47   At the hearing on the defendant's motion to withdraw his guilty plea, the trial court determined that Freeman did not provide ineffective assistance, stating that his decision not to subpoena an officer about the history of police calls to the home of the defendant and Trusty was sound because it would have allowed the State to establish a history of domestic violence incidents. The court also found that the defendant's claim that Freeman was not prepared for trial was speculative as Freeman had outlined his preparation for what was described as "a simple case." Where " 'a trial court has reached a determination on the merits of a defendant's ineffective assistance of counsel claim, we will reverse only if the trial court's action was manifestly erroneous.' " *People v. Glover*, 2017 IL App (4th) 160586, ¶ 26 (quoting *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25). We find no basis to so conclude.

¶ 48                               B. Judicial Conduct

¶ 49   The defendant failed to articulate this complaint and simply states "Judge conduct." In his August 3, 2023, affidavit, he states that the trial judge "knew about the conflicts between counsel and I." We conclude that these conclusory "allegations" provide an insufficient based upon which to grant a motion to withdraw a guilty plea.

¶ 50                          C. Defendant's Mental Impairment

¶ 51    "A defendant is presumed to be fit to stand trial ***." 725 ILCS 5/104-10 (West 2022). The same standard applies to whether a defendant is fit to enter a guilty plea. *People v. Heral*, 62 Ill. 2d 329, 334 (1976). The defendant must be capable of understanding the nature of the charges and the purpose of the proceedings and must be able to assist in his defense. *People v. Tapscott*, 386 Ill. App. 3d 1064, 1075 (2008).

¶ 52   The defendant testified that he had multiple mental health diagnoses. In his affidavit attached to his August 3, 2023, motion to withdraw his guilty plea, the defendant stated that he

18

was "not in the right state of mind" when he pled guilty. He provided no medical records documenting any psychiatric diagnosis and referenced prescription provided to him after he was arrested. That prescription, for Wellbutrin, was never given to him during his incarceration in the Clinton County jail. Upon his incarceration in the Illinois Department of Corrections, he was prescribed Zoloft, which he was apparently taking when he appeared in court for the motion to withdraw his plea.

¶ 53    Freeman testified that he asked the defendant during his first and second meetings with him at the Clinton County jail if he had any medical or psychiatric health issues, which the defendant denied.

¶ 54    The defendant never identified any mental health or psychiatric symptoms, nor did he attempt to connect his failure to take the prescribed Wellbutrin to his claims that he was "mentally impaired" or was suffering from attention-deficit/hyperactivity disorder at the time of his plea. As the trial court noted in dispensing with this issue:

> "[T]here was no testimony that he had ever been prescribed [Wellbutrin] *** previously and wasn't on that. There was *** testimony that he had told Mr. Freeman he had no prescriptions and no issues with mental health. And there was also no medical testimony stating *** that had he been prescribed Wellbutrin and [if he] wasn't on that, what effect that might have."

¶ 55    We find no error in the trial court's determination that the defendant's alleged "mental health" issues prevented him from knowingly and voluntarily pleading guilty. Additionally, as the reviewing court, it is not our place to reweigh the evidence and substitute our judgment for that of the trial court. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

19

¶ 56                    D. Being Dragged Into Court

¶ 57    This conclusory allegation related to the defendant's arraignment on new charges on July 14, 2023. We find that the defendant's characterization of his method of transport to the Clinton County courthouse on this occasion fails to establish that he was somehow prevented from knowingly and voluntarily pleading guilty.

¶ 58    E. Feeling Duress, Threatened, Coerced, Forced/Intimidated, and Conspiracy

¶ 59    The record lacks clarity on how the defendant felt attacked by the State or by Freeman as alleged. There are fragments of information gleaned from the defendant's testimony at his motion to withdraw his plea. During this hearing, the defendant indicated that he did not believe he was scheduled for a court date on Friday, July 14, 2023, but he was brought over to the courthouse and informed that he would be arraigned on additional charges. His case was scheduled for jury trial on the following Monday. He testified that Freeman called him "stupid," and informed him that if he turned down the plea deal, he would help the State obtain a "double-digit" sentence. He said that he felt coerced or under duress because he "had no choice because basically we hadn't been over my discovery or how we were even going to fight the case if we do go to trial." He also felt coerced by Freeman's alleged statement that he would assist the State in getting the defendant a longer sentence than what the State offered. In short, the defendant stated: "I didn't have a choice." The defendant had also argued that the State was intimidating him by subpoenaing Trusty to potentially testify at trial. As Trusty was the victim, it would be logical that she would be called to testify at trial. Although the defendant may have been upset that the mother of his child would be called to testify against him, that fact does not support State intimidation.

¶ 60    Postplea counsel argued that the defendant "felt" that he was under duress on the day of his plea and that "he had no choice but to enter the plea." He argued that the attorney-client

relationship was so deteriorated "that there was no way for them to have a meaningful conversation that was going to make him feel as though he had a choice that day."

¶ 61    Freeman testified that he never called the defendant stupid or threatened to assist the State in getting him a sentence longer than the plea offer. He acknowledged that he may have told the defendant that it "would be stupid" to decline the plea offered by the State.

¶ 62    The trial court found that there had been "no testimony by the defendant and no specific facts in the motion that [constitutes] a threat. The—only thing that came even close to that was the defendant's testimony that he needed to be separated from Mr. Freeman when they were discussing the case that morning." The court noted, however, that due to his in-court behavior, the defendant was the individual who would have been placed in ankle restraints during his impending trial, instead of the defendant requiring protection from his attorney. The court also noted that it was certain that the defendant was not happy to hear from his attorney that he would not receive probation, "but that's no reason to come in and say that you were coerced." Although the defendant testified that he felt under duress on the date of the plea, the trial court noted that the defendant presented different emotional attitudes at court that date from when he was angrily declining the plea deal, and when he readily agreed to accept the plea.

¶ 63    At his plea hearing, the following colloquy occurred:

> "THE COURT: Has anyone forced you, threatened you, or coerced you to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone promised you anything other than what I have been told today to get you to plead guilty?
>
> THE DEFENDANT: No, sir."

21

At the hearing on his motion to withdraw his guilty plea, the defendant testified that he lied to the court when he pled guilty about not being forced, threatened, or coerced to plead guilty.

¶ 64    We note that "[a] defendant does not have an absolute right to withdraw his guilty plea." *People v. Manning*, 227 Ill. 2d 403, 412 (2008). The burden to assess the credibility of witnesses who have testified at a hearing on a motion to withdraw a guilty plea lies with the trial court judge. *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 43 (quoting *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005)).

¶ 65    Having reviewed the entire record on appeal, we conclude that the trial court's assessment of the credibility of the defendant and Freeman supports its decision that the defendant's claims that he pled guilty due to duress, feeling threatened, being coerced, being forced and/or intimidated, and/or due to some unspecified conspiracy were unsubstantiated.

¶ 66                    F. Attempted Firing of Plea Counsel

¶ 67    The defendant also claims that his motion to withdraw his plea should have been granted because he attempted to terminate his attorney-client relationship with Freeman. The trial court indicated that it remembered the defendant's request and had asked the defendant to explain why he felt that Freeman was providing ineffective assistance. Noting that the defendant had not provided an example of ineffective assistance, the court stated that although the defendant was entitled to a public defender, the public defender's job was not to be the defendant's friend. Thus, the trial court had not allowed the "request" to fire Freeman.

¶ 68    We note too that the defendant indicated that he was going to hire private counsel, and the court advised that Freeman would remain on the case until another attorney entered his or her appearance. The defendant did not hire private counsel, and the case proceeded.

22

¶ 69 Ultimately, we find that the statements the defendant made in court indicating his dislike of Freeman were inconsistent. While he expressed his disdain with Freeman, he never formally filed a written request for a change. Accordingly, we conclude that the defendant's claims that he wanted or attempted to terminate his relationship with Freeman do not support the defendant's request to withdraw his guilty plea.

¶ 70                                    G. Excessive Sentence

¶ 71 The defendant's sentence was expressly part of the plea deal. The defendant accepted the State's plea offer at the July 14, 2023, hearing; pled guilty to the charge; and was sentenced accordingly. The defendant's plea agreement with the State did not allow the State to argue for a sentence from the full range of available statutory penalties; therefore, the defendant could not challenge his sentence, as the "sentence is premised upon the plea." *People v. Diaz*, 192 Ill. 2d 211, 225 (2000). Because the defendant's sentence was the result of a plea, "[t]he fact that a lesser sentence was imposed in another case has no bearing on whether the sentence in the case at hand is excessive *on the facts of that case*." (Emphasis in original.) *People v. Fern*, 189 Ill. 2d 48, 56 (1999). Thus, we find that this issue has no merit.

¶ 72              H. Victim's Wishes About Criminal Charges and Sentencing

¶ 73 The defendant argues that the victim did not want him to be charged or to receive a prison sentence. Crime victims do not have a right to determine what charges are filed. Instead, the State has the discretion to charge a defendant with a crime. See *People v. White*, 2011 IL 109616, ¶ 25.

¶ 74 Similarly, crime victims do not get to select a defendant's punishment. Generally, a trial court "has broad discretionary powers in imposing a sentence." *Stacey*, 193 Ill. 2d at 209 (citing *Fern*, 189 Ill. 2d at 53). Here, Trusty wanted the defendant to receive only probation and rehabilitation services. Generally, a victim has the right to be "treated with fairness and respect for

23

their dignity and privacy *** throughout the criminal justice process." 725 ILCS 120/4(a)(1) (West 2022). That process could entail creating a victim impact statement. Although a victim has certain rights within our criminal justice system, victims do not have the right to precisely select a defendant's punishment.

¶ 75　Here, the defendant and the State reached a very specific plea deal and the trial court sentenced the defendant according to that plea deal. As the victim had no legal authority to dictate the criminal charges filed against the defendant or the sentence he would receive, we find that this issue is meritless.

¶ 76　　I. Defendant's Confusion About the Sentence Associated With His Plea

¶ 77　The defendant argues that he thought that his sentence would be different than what the trial court imposed. Specifically, he states that he believed he would serve his sentence at 50% and not 85% and that he would not be subject to four years of mandatory supervised release after completing his term of incarceration. The following colloquy occurred during the defendant's plea hearing:

> "THE COURT: And the State and your attorney have indicated to me that in exchange for your plea of guilt on that count, you will be sentenced to nine years to the Illinois Department of Corrections. That's an 85 percent sentence. To be followed by four years of mandatory supervised release.
>
> * * *
>
> *** Do you understand the actual penalties that I just read to you?
>
> THE DEFENDANT: Yeah."

We have reviewed the complete transcript of the plea and sentencing hearing and find no basis to conclude that the defendant could have misunderstood the terms of his sentence. Neither the court

nor counsel indicated that the sentence would be served at 50% or indicated that there would be no period of mandatory supervised release upon completion of the period of incarceration. Thus, this argument is also meritless.

¶ 78                                    III. CONCLUSION

¶ 79    We conclude that postplea counsel's Rule 604(d) certificate strictly complied with the requirements of the rule. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 30 (citing *People v. Easton*, 2018 IL 122187, ¶ 26). We also conclude that postplea counsel adequately ascertained the defendant's contentions of error. The defendant's *pro se* filings provided the issues to be addressed by the court in ruling upon his motion to withdraw his guilty plea. We find no error on the part of postplea counsel in not amending the defendant's pleadings.

¶ 80    We find that the trial court's decision to deny the defendant's request to withdraw his guilty plea was within the trial court's sound discretion. *Delvillar*, 235 Ill. 2d at 519 (citing *People v. Walston*, 38 Ill. 2d 39 42 (1967)). The ruling was not "arbitrary, fanciful, unreasonable, or [one where] no reasonable person would take the view adopted by the trial court." *Id.* (citing *People v. Patrick*, 233 Ill. 2d 62, 68 (2009)).

¶ 81    For the foregoing reasons, we affirm the order of the Clinton County circuit court.


¶ 82    Affirmed.